Nelson, Ch. J.
*By the Court, The counsel for the defend- [ *265 ] ant, in opening the defence, among other grounds, stated that he should prove that the signature of his client, as well as others to the articles declared upon, were procured by fraudulent and false representations as to the cost of the property, and the location and value thereof; and also in respect to the individuals who had signed or agreed to sign, and their interests therein. In the course of the trial, he offered proof of the. several matters stated in his opening ; and that the false representations were made by- the agent of the plaintiff, who procured several signatures, and among others that of the defendant. This was objected to, and excluded by the learned judge," on the ground that the evidence shewed E. S. a special agent only, authorized to obtain signatures to a written proposition of sale, containing explicit terms and conditions, and that the representations, if made, could not affect the plaintiff. Unless this position can be maintained as a sound principle of law in respect to limited agencies for a special purpose, the defendant, I think, is entitled to a new trial; though several other grounds are now taken in support of the verdict, even if this decision be erroneous. They will be noticed hereafter.
We may remark that the proof proposed did not go to vary the terms or conditions of the contract, which seems to be implied in the reasons assigned at the trial for the rejection, but to show that the defendant was induced to enter into it as drawn, in consequence of the, fraudulent representations of the agent in respect to the subject matter — the property sold, and which was material in forming an estimate of its value. The legal effect of the representations we will examine hereafter; for the present, we assume they were sufficient to go to the jury on the point of fraud ; and the question is, whether they were competent to affect the plaintiff in that aspect of the case.
*265 The distinction between a general and special agent has often been the subject of discussion in adjudged cases, and by elementary writers ; but it is not particularly important here, as this is conceded to be a case of special agency. Our inquiry is more especially directed to ascertain the [ *266 ] *extent of the principal’s responsibility in cases of this character ; or rather, confining it more particularly to the, point before us, to what extent and under what circumstances will the principal be held responsible for the representations and declarations of the agent.
Mr. Justice Story, in his recent valuable commentaries on the subject,^. 126, lays down the general rule, and which is as applicable to special as to general agents, that “ where the acts of the agent will bind the principal, there his representations, declarations and' admissions respecting the subject matter, will also bind him, if made at the same time, and constituting part of the res gestee.” He further observes, that “ for most practical purposes, a party dealing with an agent, who is acting within the scope of his authority and employment, is to be considered as dealing with the principal himself. If ibis the case of a contract, it is the contract of the principal. If the agent, at the time of the contract, makes any representation, declaration or admission touching the subject matter of the contract, it is the representation, declaration or admission of the principal.” These principles are fully borne out by the several authorities referred to — are founded in good sense, and with a just conception of the commercial and other business transactions of life from which they have been derived.
It is insisted, however, that the very limited and special character of the agency in question forms an exception, and several cases are relied on. 1 Salk. 95. 2 id. 442. 3 T. R. 757. 15 East, 400, 408. 2 Johns. R. 48. 7 id. 390. Where a person is engaged in a particular department of business, and is employed to do an act within his line, with special restrictions, there the general powers, derivable from the nature of his ordinary employment, will control the limitation ; he will be held to possess such in the particular instance, as his ordinary occupation fairly imports to the public. But in the absence of any such complication of general power, the limitation will control. Thus, in the case of a factor or servant of a horse dealer in the habit of making sales, if the factor or servant should be specially instructed in a given instance, the instructions would not be binding if [ *267 ] *in conflict with the general authority derivable from their occupations. But if a person who had no such general character should be employed to do a particular act, such as sell a lot of goods, horse, &c. and in respect to which his power is specially limited, there if he exceed the linr itations, his principal will not be bound. The reasons for this distinction are obvious and sound, and need not be repeated ; and if the case falls within it, the decision at the circuit should be sustained.
One ground for the qualification of the authority undoubtedly exists, *267 Nothing is to be implied from the general or ordinary pursuits of the agent. But the difficulty lies in annexing the restriction contended for, to the authority. The agent here had power to procure the subscription to the contract of sale : and in the absence of special instructions to the contrary, at least, does not this imply the right to use the ordinary means and inducements to accomplish the end ? Must not the plaintiff have expected that the agent would speak of the property, its situation, quality, &c. ? This is laid down as a general principle, and upon reason and authority, is applicable to both special and general agents. 4 T. R. 177. 5 Esp. R. 72. Ross on Vendors, 156. 2 Camp. 555. Smith’s Merc. Law, 61. Story’s Comm. on Agency, 60 and 70.
The case of Nixon v. Hyserott, 5 Johns. R. 58, is supposed to hold a contrary doctrine. But there the power was necessarily in writing, and subject to the inspection of the party : this he is presumed to have known, and no good reason exists for binding the principal beyond the scope of it — if the party neglect to call for the power, and judge for himself, it is his own fault.
The case of Gibson v. Colt and others, 7 Johns. R. 390, is doubtless a much stronger one for the plaintiff: but that was decided upon Fern v. Harrison, 3 T. R. 755, without adverting to the same case when up the second time, 4 T. R. 177, and as said by the late chief justice in Jeffrey v. Bigelow, 13 Wendell, 521, might have been decided the other way. I may add, it ought to have been so decided, standing as it professes to do, upon that case : for the court There held the principals bound, be- [ *268 ] cause the agent was not specially restricted in selling the bill, and therefore there was an implied authority to endorse it. That case, and the whole current of authority, shews that, unless the manner of doing the particular act is prescribed, even the special agent will be deemed clothed with the usual and ordinary means of accomplishing it. See also 6 Cowen, 357.
But it maybe said, that the principal should not be held responsible for misrepresentations, as no authority to deceive and defraud can properly be implied as one of the means. There is undoubtedly much force in this view, and at a very early day it carried with it the judgment of the court. Bro. Abr. Action on the Case, pl. 8. But Lord Holt in Hern v. Nichols, 1 Salk. 289, overruled that decision, and held him liable. This has been the approved law ever since; 3 Atk. 47 ; 1 T. R. 12 ; Ross on Vend. 161 ; Story’s Comm. Agency, 131 ; 13 Wendell, 521 ; 1 Camp. 127 ; Smith’s Mer. Law, 70 ; 1 Strange, 647 ; 4 T. R. 39 ; and the reasons given cannot fail to recommend themselves to the good sense of every man ; “ for seeing somebody must be a loser by the deceit,” he says, “ it is more reason that he that employs and puts a trust and confidence in the deceiver, should be a loser, than a stranger.” See also 1 T. R. 16 ; 2 Stark. Ev. 269 ; Bull. N. P. 31. Indeed, when it was determined, that the principal should be held responsible for the representations of the agent, it necessarily followed that he *268 should be for fraudulent representations, because they are made in the course of the execution of his authority ; he is held out as fit to be trusted, and his fidelity and good conduct in the matter, thereby impliedly recommended ; Attorney General v. Siddon, 1 Tyrwh. R. 46-7, Bayley B.; Smith’s Mer. Law, 70 ; Story’s Comm. Agency, 465 ; and where one of two innocent persons must suffer by the fraudulent act of a third, the one who enables such third person to commit the fraud, must bear the loss. But it is said, that the facts proposed to be proved, fell short of making out the fraud, and for that reason were properly rejected. That is true so far as opinion [ *269 ] of value went, but a false representation as to location *might have been material, and might have been made under circumstances and in a way calculated to mislead the defendant, who possibly bad no opportunity at the time to examine personally the premises, and purchased, confiding in the representations of the agent. If so, he had a right to rely on them, and the plaintiff, who is presumed to have known the location, at least until the contrary is shown, must be held responsible for the truth of the account given. It is said, that this ground was not covered by the notice under the plea of non est factum ; but no such objection appears to have been taken, and therefore wm are to consider it waived.
I am also inclined to think that any misrepresentation as to the actual cost of the property, is a material fact, and naturally calculated to mislead the purchaser. In Sisney v. Slbey, 2 Lord Raym. 1119, an action was held to lie, for falsely affirming the rents to be more than they actually were. See 3 T. R. 58; 3 B. & C. 623; 2 Carr. & Payne, 337. The price which an article is bringing in the market, is often a material fact, and a fruadulent representaticn, by a person who has peculiar means of knowledge, has been held to invalidate the contract. Misrepresentation of the cost of an article, stands somewhat on the same footing; it is a material fact, which not only tends to enhance the value, but gives to it a firmness and effect beyond the force of mere opinion. The vendor is not bound to speak on the subject, but if he does, I think he should speak the truth.
The counsel for the defendant objected to the reading of the contract, after proof of the execution, until the signatures of all were proved, which was overruled. This, I think, was correct, and all the proof the issue called for. A question might have been raised when the articles were produced, on the ground of variance, namely, whether upon the true interpretation of the contract, the taking up of the tiventy-three shares were not a condition of the liability of each and every subscriber. The plaintiff is bound to set out the agreement according to its substance and effect, and if he fail to do so, the objection is available under the plea of non est [ *270 ] factum. 11 East, 633. The pleaderhere has *assumed that each subscriber became liable, upon the plaintiff conveying to the trustee. The question, however, came up on the motion for a nonsuit; it is one, *270 undoubtedly, of some difficulty, and probably the most important arising out of the contract, and upon which it may ultimately turn. It goes to the liability of all the subscribers; and as the case will again come before us, especially if the point of fraud is found for the plaintiff, and as it involves a considerable amount of property, we will forbear expressing any opinion till we have the benefit of another argument.
New trial granted ; costs to abide event,