By the Court,

Nelson, Ch. J.
The certificates of the notary were properly received as evidence of demand and protest of the first two bills; and, under our statute, (Sess. Laws of 1833, p. 395, § 8, see also 2 R. S. 212, § 46, 2c? ed.,) I am inclined to think they were also evidence of notice to the cashier of the bank at Erie, the last endorser upon the paper.
The act referred to allows such proof of the sendee of notice upon any or all of the parties to the bill or note, the *457 certificate specifying the mode of giving it. The only doubt upon the point is, whether the cashier of the bank at Erie, having endorsed the paper simply for the purpose of collection, should be regarded as a party, within the meaning of the statute. The case is directly within its terms, as the endorsement is in the usual way, and, it may fairly be presumed, was made in behalf of the bank for the purpose of indicating to its correspondent in New-York the expectation that notice should be sent, to it in that character. I think the face of the paper should be allowed to govern the question, rather than the particular character that may be given to it, as between the parties, by extrinsic evidence. Every exception made to a general commercial rule concerning negotiable paper, which enters so extensively into the business transactions of the country, is calculated to embarrass its circulation, and endanger its security and usefulness. This construction will in no respect operate to the prejudice of any party liable upon the paper, whether drawer or endorser, as will be seen upon a further examination of the law.
It is perfectly clear, where a bill or note is sent by the holder to his agent for him to receive payment, and he gives due notice to the principal of its dishonor, that prompt notice from the latter will be in time to charge the prior parties; though if it had been sent directly by the agent, the notice would have reached them much sooner. (Chitty on Bills, 520, 1, 9th Am. from 8th Lond. ed. Bayley on Bills, 174.) The case of Mead v. Engs, (5 Cowen, 303,) is a clear authority for this doctrine, and comes fully up to the case under consideration, and to the view we have taken of the statute. There, the holder in New-York sent the bill to a bank at Providence for collection, whence it was sent to another bank at Bristol, (K. I.) where the acceptor resided. The notary there, after making demand and protest, returned the bill to the cashier of the Bristol bank, who sent it by the next mail to the cashier of the Providence bank, and the latter sent it by the next mail to his immediate' endorser in New- *458 York. The objection was taken, that the notary should have given notice of non-payment directly to all the prior parties; but the court held it to have been given according to established commercial • usage. It was also decided in that case, that one to whom a bill or note is endorsed merely as agent to collect, is a holder for the purpose of giving and receiving notice of non-payment; and is not bound to give notice directly to all the prior parties, but may content himself by notifying his immediate endorser,- who is bound to give notice to his endorser, &c. in the same manner as if the bill or note had been negotiated to the agent for a valuable consideration.(a) Upon this view of the case, therefore, the cashier of the Erie bank is to be regarded as a party to the paper for all purposes of receiving and giving notice to charge the prior parties; and if so, not only have the proper steps been taken to Charge the defendants, but the case is directly within the act of 1833, which makes the certificate evidence of the notice given by the notary.
It is urged, that the plaintiffs proved no valid title to the bills in question upon the following grounds, viz. 1. The proceeds of the discount were paid in notes of the old United States Bank, and this being virtually a re-issuing of the latter in violation of the laws of-the United States, as well as a fraud upon the public, the transaction was illegal, and the plaintiffs disabled from making title through it to the bills in question: 2. The plaintiffs were guilty of a violation of their own charter in exacting and taking by way of discount more than at the rate of six per cent, per annum, and that the contract was therefore incapable of being enforced.
If the plaintiffs had discounted this paper with notes of the old United States Bank, procured from that corporation, after the expiration of its charter, for the purpose of re-issuing and putting .the same again into circulation, it is clear that they could not recover. Notes paid out under such *459 circumstances, in judgment of law, would be of no value ; and if they could ever be collected of the bank that originally issued them, it would be because of its inability to show that they had been re-issued after the expiration of the charter— for if the bank could prove that they had been thus issued, though by its own officers, without authority and in violation of law, it would not be legally liable for their redemption. There would be an entire want of authority to bind it, and the act of re-issuing would be nugatory and void. But even if this were not so, had the plaintiffs discounted the bills with notes procured and re-issued in fraud and violation of the charter of the old bank, the illegality of the transaction itself out of which the contract of discount would thus have arisen, must, upon general principles, have constituted a perfect bar to the action ; for courts will not lend their aid to enforce the performance of a contract made in violation of the law of the land. In this case, however, it appears that the Erie bank were in the practice of receiving the old notes in deposit and in payment of debts due, from their customers, as it had a right to do: and the cashier, who was examined as a witness, was unable to say whether the bills in question were discounted with the notes procured from the old bank, which the Erie branch under the new charter had procured for the purpose of commencing business, or with the paper thus received from their customers. The defendants held the affirmative, and were bound to make out the illegality of the transaction on their part; and as the cashier was the only witness testifying to the point, it is impossible to say that the fact was clearly established, or that the proof was sufficiently definite and certain even to require the court to put the question to the jury. Whether the bills were discounted^vith the one or the other description of notes, was left, Tlpon the testimony, at least equally balanced, in which case the doubt must incline against the party holding the affirmative of the issue.
The plaintiffs, at the time of discounting the bills in question, in addition to the six per cent, allowed by their *460 charter, deducted one half of one per cent, as a charge for collection in the city of New-York where the paper was payable. It also appeared that, at the same time, they were selling drafts upon the city of New-York for one half of one per cent, premium. The plaintiffs thus, in effect, realized seven per cent, upon the loan, saying nothing of the discount upon the notes of the old bank with which it was made. Now I agree, that if these bills had been made payable at the Erie bank, and the borrower had desired to have the proceeds placed at some distant point, the plaintiff's might have been justified in deducting the difference in exchange between the two places, and some small customary sum for trouble and expense in the remittance of the funds; or, taking the present case, if the rate of exchange between the city of New-York, where the bills were payable, and Erie, the place of discount, had usually been in favor of the latter, the plaintiff's might, for the same reasons, have deducted it, with a like compensation for the expense and trouble of getting their funds home. (Hammett v. Yea, 1 Bos. & Pull. 144; Dunham, v. Gould, 16 John. Rep. 375; Merritt v. Benton, 10 Wend. 116; Steel v. Whipple, 21 id. 105.) But not one of these considerations exists in this case. The proceeds were paid by the plaintiff's at their own banking house, and the rate of exchange between that place and the city where the bills were payable, was one half of one per cent, in favor of the latter. This was admitted and acted upon by the bank itself, by selling drafts at the time upon the city, charging this amount as a premium for furnishing the funds there. The trouble and expense of transmitting the paper to the city for collection was, therefore, paid for by the difference of exchange in favor of 'that place. Hence, I amiable to perceive any legitimate equivalent in the case that can go to absorb this excess of one half of one per cent. It is a naked, unexplained, unjustifiable charge and receipt of so much more than the rate of discount allowed by the charter, and it appears to me the plaintiff's might as well have ta ken, upon the excuse set up, any other sum, under the pre *461 tence of a charge for the trouble and expense of collection, as the one received; and, were it necessary to the decision of the case, I should not hesitate to hold that the paper was discounted in violation of law, and the plaintiffs, therefore, not entitled to be regarded as bona fide holders.
It appears that these bills were transmitted by the drawer to Williams, one of the directors of the bank, for the purpose of having them discounted for the benefit of the former; that the director put his own name upon the paper, and procured it to be discounted for himself, and appropriated the avails accordingly ; he, at the time, being one of the five directors constituting the board which discounted the paper. His associates had no notice of the fraudulent use of the bills, and supposed the discount was made in good faith for himself. The material question which arises upon this branch of the case is, whether or not the bank is chargeable with notice of the fraudulent conduct of their director, while thus acting in the transaction of their business as one of the members of the board.
The general rule is undisputed, that notice to the agent is notice to the principal, if the agent comes to the knowledge of the fact while he is acting for the principal in the course of the very transaction which becomes the subject of the suit; for upon general principles of policy, it must be taken for granted that the principal knows whatever the agent knows. There is no difference between personal and constructive notice, except in, respect to the guilt; for if there were, it would produce great inconvenience, as notice might be avoided in every case by employing an agent. (Hiern v Mill, 13 Ves. 120; Paley on Agency, 262, Lloyd’s ed.; Com. Dig. tit. Chancery, 4 c. 5, 6; Warrick v. Warrick, 3 Atk. 294; Mechanics Bank of Alexandria v. Seton, 1 Peters' U. S. R. 309; Story on Agency, 131, 132.)
Two grounds have been strongly relied on, for the purpose of taking this case out of the operation of this general rule, viz: 1. That Williams, the director, should not be regarded as acting in behalf of the bank, but for himself, *462 while engaged in the perpetration of the fraud in getting the paper discounted; and 2. That not being an agent with full and complete authority to discount the paper, but being only one of five, constituting a board competent to do the act, the knowledge of one or the fraudulent act of one, should not be deemed a constructive notice to the principal: in other words, that the fact must be communicated to the board—at least to a majority of the members—to bring the case within the rule. It is not true in point of fact, that Williams was not acting in behalf of the bank at the time of the transaction in question. He was present as one of the board of directors, X engaged in the business of consulting and advising with his associates in respect to the character of the paper presented at the time for discount; and advised, and doubtless recommended, in his character and capacity as such director, the •bills in question to the favorable notice of the board. It is fairly to be inferred, moreover, as well from the facts in the case as from the natural and probable influence resulting 'from his position, that the bills in question were discounted in consequence of his being and acting as such director at the time. It is no answer,' therefore, to say, that Williams is not to be regarded as acting in his capacity of director in behalf of the bank, but for himself, while engaged in perpetrating the fraud; for the position is a contradiction of the obvious truth of the case. Nor is there any thing novel or singular in the idea that an agent may be guilty of fraud and deception in transacting the business of his principal, or in the law that holds the latter responsible for the consequences to third persons. The doctrine is very familiar, and of every day application in the administration of justice. (Story on Agency, 131; Sandford v. Hawley, 23 Wend. 260.) Indeed, many of the cases where the principal is charged constructively through the agent, are cases where the former has been subjected to liability or suffered loss by reason of the fraud of the agent; as in the case of fraudulent representations or a fraudulent concealment of material facts by the agent when *463 engaged in transacting the business of the principal. The books are full to the point. (Story on Agency, 131; Jeffrey v. Bigelow, 13 Wend. 521.)
I agree, that notice to a director, or knowledge derived by him, while not engaged officially in the business of the bank, cannot and should not operate to the prejudice of the latter.(b) This is clear from the ground and reason upon which the doctrine of notice to the principal through the agent rests. The principal is chargeable with this knowledge for the reason that the agent is substituted in his place, and represents him in the particular transaction: and as this relation, strictly speaking, exists only while the agent is acting in the business thus delegated to him, it is proper to limit it to such occasions. But in this case, as has been already observed, Williams was a member of the board, participating at the time in the discounting of bills and notes as one of the directors of the bank; and as such procured the discount of the paper in question, avowedly for his own benefit, but knowing at the time that it belonged to Davis, one of the defendants; So far, therefore, as he may be regarded as representing the bank in transacting its business at the board, the institution must be considered as having knowledge of the fraudulent perversion of the bills from the object for which they were drawn. To this extent, his acts and knowledge concerning the object and ownership of the paper are to be deemed the acts and knowledge of the institution itself.
It is said, however, that Williams was but one of the five empowered by the bank to represent it in this transaction; that the bank is not therefore to be held responsible for his individual fraud at the time, nor can it be chargeable with his knowledge of the facts under which the paper in question was discounted ; and that such knowledge is chargeable only when the agent has full power to act for the principal in the particular case. It is not to be denied, that if a principal employs several agents to transact joint *464 ly a particular piece of business, he is equally responsible for the conduct of each and all of them while acting within the limit and scope of their power, as completely so as he would be for the conduct of a single agent upon whom the whole authority had been conferred. He cannot shift or avoid this responsibility by the multiplication of his agents. It is also clear, that the corresponding responsibility of each of the several joint agents to the principal for the faithful discharge of their duties, is as complete and perfect as in the case of a single agency; and any prejudice to the principal arising from fraud, misconduct or negligence of either of them, would afford ground for redress from the party guilty of the wrong. These are general conceded principles for which no authority need be cited. One of the grounds for charging the principal with the knowledge possessed by the agent is, because the latter is bound to communicate the fact to the former, and is liable for any prejudice that may arise from a neglect in this respect; and hence the law presumes that the principal has had actual notice. Now, the duty of any one of the joint agents is as obligatory upon him in this respect, as if he had possessed the sole power in the matter of the agency, and any prejudice resulting from the neglect would afford a like redress. Again: So completely is the principal represented by the agent while acting within the scope of his authority and employment, that the third party, for most purposes, is considered as dealing with the principal himself. In the case of a contract, it is deemed the contract of the principal, and if the agent at the time of the contract make any representation or declaration touching the subject matter, it is the representation and declaration of the principal, (Sandford v. Handy, 23 Wendell, 260, and cases there cited.)
Upon these views, it seems to me consistently and reasonably to follow, that in case of a joint agency by several persons—as of the directors of a bank—notice to any one, or the acts of any one, while engaged in the business of the principal, is notice to the bank itself. The corporation *465 is acting and speaking through the several directors who jointly represent it in the particular transaction. In judgment of law it is present, conducting the business of the institution itself; the acts of the several directors are the acts of the bank; their knowledge the knowledge of the bank, and notice to them notice to the bank.
But one answer has been made to the conclusion at which we have arrived, and that is, that Williams should not be regarded as a director in the discount of the bills in question. If this could be maintained, then, I admit the argument fall's. But we have already endeavored to show this position to be utterly untenable :—that it is not true either in point of fact, or in contemplation of law.
The hardship of holding the plaintiffs responsible for the fraudulent conduct of a single director, has been alluded to; but between two innocent parties in this case, where should the responsibility fall ? The plaintiffs appointed the director, and thus held him out to their customers and the public as entitled to confidence. They placed him in a position where he has been enabled to commit this fraud. It has been said, that he was the agent of Davis in procuring the discount of the paper, and not of the bank. The answer is, that the bills were placed in his hands as a director, and because he was one. They were placed there for the purpose of being brought before the board, that they might be passed upon in the usual and customary way of procuring accommodations. Thus far he may be regarded as the agent of Davis; but beyond this, the action upon the bills was the action of the board, and the discount the discount of the board, which was composed of the admitted agents of the plaintiffs.
New trial granted.

 And see Howard v. Ives, (1 Hill, 263, 4, 5.)

 See National Bank v. Norton, (1 Hill’s Rep. 572, 577 to 580.