## DENNIS vs. ASHLEY'S Administrators.

1. An authority to sell a slave includes and implies a power to warrant the slave to be sound. A warranty of soundness is one of the usual means of effecting a sale of such property, and the power to make it is incident to the power to sell.

## ERROR to Andrew Circuit Court.

### STATEMENT OF THE CASE.

This was an action brought in the Andrew circuit court, in March, 1849, by Thomas Dennis against Ephraim Myers and Oswald Roberts as administrators of the estate of Allen Ashley, deceased.

The declaration states, that in August, 1847, the said Ashley sold to Dennis, the plaintiff, a certain negro slave named Harriet for the price of $410, which said slave was by said Ashley, upon said sale, warranted to be sound in body and mind, and a slave for life. The declaration then charges that the said slave was, at the time of said sale and warranty unsound, &c, and that said Dennis was damaged thereby, &c.; also adding the common money counts. The defendants pleaded the general issue. Upon the trial of the cause it was fully proved by the plaintiff, that in the fore part of the year, 1847, and in the life time of said Ashley, said Ashley left said negro slave Harriett with one Richard J. Curl, in the city of St. Louis, to be by him sold. That said Curl followed the business of selling negroes in St. Louis for every body who chose to employ him for said purpose; that he held himself out to the public as a public and general agent in said business; that said negro was left with said Curl by said Ashley to be sold by him without any direction from said Ashley as to whether he should or should not warrant the soundness of said negro upon a sale thereof.

Curl, on the 7th day of August, 1847, as such agent of Ashley, sold said negro woman to said Dennis for $410, (which was at the time a fair price for said negro if sound and healthy) and gave said Dennis a written warranty, both as to the soundness and title of said negro, in the name of Ashley, his principal. That he offered to sell said negro to Dennis for twenty dollars less if he would purchase without warranty, but that Dennis refused to purchase at all without warranty.

Dennis then fully proved that said negro woman was unsound at the time of said sale and purchase as aforesaid, and that said Dennis, after discovering said unsoundness, had procured said negro to be sold after having given public notice of said sale, and that the highest price she would bring was $150.

The defendants proved by a witness, that said witness was acquainted with Ashley and the negro before said sale, and that he had seen said negro several months before said sale, and that if she was unsound he did not know it; which was all the evidence offered by defendants.

The plaintiff then moved the court to give the jury certain instructions, as follows:

1. "If the jury believe from the evidence, that Allen Ashley, in his lifetime, sold a negro woman to plaintiff by agent, and that the agent had general authority to sell said negro woman and did sell her to plaintiff," and warrant her to be sound, for the sum of $410, and that said negro woman was unsound, then they will find for the plaintiff the difference between what said girl was worth and what she would have been worth if sound, with interest from the time of the purchase."

2. "That if they believe from the evidence, that Allen Ashley, in his life time, by himself or agent, sold to plaintiff a negro girl for four hundred and ten dollars, representing her to

be sound, and that said negro girl was at the time of said sale unsound, and that the plaintiff paid the money for said girl, then they will find for plaintiff what said girl was worth, less in consequence of her unsoundness than she would have been if sound, together with interest from the time that the money was so paid."

3. "That if the jury believe from the evidence, that Allen Ashley, in his life time, employed one ———— Curl as his agent to sell a negro woman without restricting his authority to warrant the soundness of said negro woman upon a sale thereof, then he, by said employment, impliedly gave said Curl authority to warrant the soundness of said negro woman, and if said Curl did, in conformity to said employment, sell said woman to plaintiff and warrant her to be sound, then the said Ashley was bound by said warranty."

4. "That an agent, employed to sell a negro woman, has implied authority to warrant the soundness of said negro woman, and if he does so warrant the soundness of said negro woman, his principal is bound thereby."

5. "If the jury believe from the evidence, that said Allen Ashley, in his lifetime, employed one Curl to make sale of a negro woman, Harriet, for him, and that in conformity with said employment said Curl did sell said woman to plaintiff for four hundred and ten dollars, and that plaintiff paid the price dowon for said woman, and that upon said sale said Curl warranted said woman to be sound in the name of his principal, then said Ashley was bound by said warranty, and if the jury further believe that said negro woman, at the time of said sale and warranty, was not sound but disordered so as to lessen her value, then the jury will find for plaintiff what damages he sustained by the unsoundness of said negro woman."

6. "If the jury believe from the evidence, that the said Ashley, in his life time, employed one Curl as his agent, (who was a dealer in buying and selling negroes for all who employed him) to sell the negro woman Harriet named in the declaration, and gave him a general authority to sell said woman, and that the said Curl, as such agent, did sell said woman to plaintiff—representing her to be sound, and that said plaintiff, relying upon said representation, purchased said woman for $410, and paid the money down; and if the jury further believe that said negro woman, at the time of the sale, was disordered and unsound, so as to render her greatly less valuable then represented, then they will find for plaintiff the damages which he sustained in consequence of said unsoundness."

Which were all refused by the court and exceptions taken.

The court then gave the jury the following instructions:

"That if the jury believe from the evidence, that said Ashley, in his lifetime, sold by himself or agent, a negro woman to plaintiff, and that said Ashley knew that said woman was unsound, and concealed the fact from plaintiff, and induced plaintiff to pay for said negro the price of a sound negro, then they will find for plaintiff the difference between the real value of said negro and what plaintiff gave for her, provided they believe that plaintiff in a reasonable time offered to return said woman to said Ashley or his agent."

"That although they may believe from the evidence, that Curl was the agent for Ashley in the sale of the negro, and therefore had power to sell the negro, yet Curl, the agent, had no power to bind Ashley, his principal, by warranty, and that said defendant is not liable on such warranty, unless they believe from the evidence that Curl, the agent, was expressly authorized to make such warranty."

"That plaintiff having declared on a verbal warranty alone, the written warranty is therefore excluded from the consideration of the jury as not being sued on."

"That plaintiff cannot recover on the common counts, having shown a written warranty, they must rely upon it."

"That unless they recover on the warranty, they cannot recover at all."

"That unless they recover upon a warranty, they cannot at all, unless they show that Ashley or his agent had knowledge of the disease of the negro at the time of sale, not disclcsed by the seller."

To the giving of which said instructions by the court, the plaintiff objected, but the court overruled said objections and so instructed the jury, and the plaintiff at the time excepted.

The plaintiff then took a non-suit with leave to move to set the same aside; and afterwards moved to set said non-suit aside for reasons stated in said motion, which said motion was by the court overruled and exceptions taken.

The plaintiff has brought the cause here by writ of error and assigned as errors the opinions of the court excepted to.

## Vories, for plaintiff in error.

1. The court erred, as well in refusing to give the jury the instructions asked for by the plaintiff as in giving the jury the instructions which were given on the part of the defendants. Curl, the agent, having authority to sell the negro for Ashley, without restriction as to the mode of sale, was impliedly authorised to bind his principal in all such subordinate acts as were necessary to carry into effect said sale: Chitty's Contracts, 7th American edition 216, and note 219; 2 Starkie's Evidence 904 and note; Gains vs. McKinley, 1 Ala. R. N. S. 446.

2. Curl being a general agent, whose business it was to sell negroes placed in his hands for that purpose, and known to be such, his principal was bound by his contract of warranty, although he was not specially authorised to do so by his principal, and it makes no difference in such case that he has only been employed in one particular transaction by his principal. The court below therefore erred in instructing the jury that the agent in such case must have express authority to warrant in order to bind his principal: Story on Agency, secs. 131, 132, 135, 107, 109 and note; 15 East. Rep. 44, 45; 6th Cowen 354.

3. When an agent is employed in the course of his usual employment or business, his principal is bound by his acts, although in the particular case he has exceeded the authority or instructions given by his principal: Story's Agency, sec. 443.

All of the authorities referred to and relied upon in this case by the defendants, relate to strictly special agents, where the mode of doing the act to be done is restricted to some particular manner, and therefore do not apply to this case, as it is insisted that Curl in this case was a general agent, acting in a general employment to do an act in that employment without being restricted to any particular mode.

4. The court erred in refusing to set aside the non-suit in the cause, and to granting the plaintiff a new trial.

## P. Williams, for defendants in error.

1. The court did not err in refusing to give the instructions asked by the plaintiff.

2. The court did not commit error in giving the instructions asked by the defendants.

3. The court did not err in refusing to set aside the non-suit taken by the plaintiff.

4. The testimony is not sufficient for the plaintiff to recover, therefore the non-suit ought not to have been set aside.

5. A power to sell a chattel does not give to the agent a power to warrant soundness. This is the main point in this case: Section 6 Howard, 345; 8 John R. 494; 5 John R. 58; 10 Mass. 397; 2 John. R. 48; 12 Mass. R. 518; 2 Johns 48; 1 Wash. C. C. 174; 5 Johns 58; 1 Pet. 264; 10 Mass. 397, 403; 15 Johns 44; 6 Verm. 334; 8 Wend. 494; 4 J. J. Marshall, 456; 18 Johns. 363; 1 Hill's S. C. 204; 7 Johns. 390; 9 Wend. 54; 13 Wend. 518; 2 Kent's Com. 620; 1 Livermore 107, 108; 6 Cow. 324; 15 John. 54; 7 ib. 393; 1 Salk. 289.

The judgment of the court below is right in refusing the instructions asked by the plaintiff, and in giving the instructions asked by the defendants, as is fully maintained by the authorities here cited. That the plaintiff cannot recover upon the testimony in the record against the principal upon the warranty of soundness unless they show that the agent had express authority to warrant, or that it is absolutely necessary in the execution of the power to sell, that a warranty of soundness be necessary to execute the power to sell.

The testimony does not show that it was the custom of the agent, in sales of negroes by him for others to warrant the soundness, which is indispensible in this case.

Covenants of warranty, upon sales are special contracts, as the sale is good without such covenants, therefore upon principle, if the sale be made by an agent, it requires special authority from the principal to bind him in the covenants of warranty. It is therefore clear that the court did right in overruling the motion to set aside the non-suit.

RYLAND, J., delivered the opinion of the court.

The question in this case, as will be seen by the above statement, involves the authority of the agent to bind his principal by a warranty of soundness in the sale of a personal chattel. The instructions refused on the part of the plaintiff, and those given for the defendants in the court below, all rest upon this authority. It is a branch of the law on which many adjudications have been made, and which has also employed the labor and learning of elementary writers. The decisions are not uniform; and distinctions have been taken which are not supported in reason, and are destitute of the force of enlightened authority. However, some general rules may be gathered from the decisions which will be of importance in settling the question so far as it relates to this case.

"In all cases an authority is to be construed, and the intention of the principal to be ascertained, in reference to the purpose of the appointment; and a consideration of the object which the agent is directed to accomplish will either expand the powers specified, as means of executing it, or limit the exercise of the most general powers conferred. Accordingly, it is a general maxim, applicable to special and limited agencies, as well as to those which are more comprehensive and discretionary, that in the absence of special instructions to the contrary, and in the absence of such prescription of the manner of doing the act as imples an exclusion of any other manner, an authority or direction to do an act, or accomplish a particular end, implies and carries with it authority to use the necessary means and inducements, and to execute the usual legal and appropriate measures proper to perform it," or as it has been expressed, the "principal authority includes all mediate powers which are necessary to carry it into effect:" Peck and another vs. Harriott and another; 6 Serg. and Rawle 146, 151; 1 American Leading cases, 394.

"The amount of this rule is, that a dirction or authority to do a thing is a reasonable implication of the powers necessary to accomplish it, unless there is a special restriction, or unless an intention to the contrary is to be inferred from other parts of the authority."

Upon this principle, it has been decided, that a special agency to sell chattels, or to procure subscribers to a joint stock company relating to lands, implies (unless forbidden) an authority to bind the principal by a warranty or representations respecting the quality or condition of the subject of the contract, such being usual means of accomplishing the proposed end: Sanford vs. Handy, 23 Wend. 260; Nelson vs. Cowing, 6 Hill, 337; and that an authority to sell a slave, includes and implies a power to warrant the slave to be sound: Skinner vs. Gunn, 9 Porter, 305; Gaines vs. McKinley, 1 Judges Alabama Rep. 446. An authority to sell and convey lands, will authorise the execution of deeds with general warranty binding the principal, if there be no restriction in the power: Peters vs. Farnsworth, 15 Vermont 155; Taggert vs. Stanberry, 2 McLean, 543, 549; Vanada's heirs vs. Hopkins adm'r., 1 J. J. Marshall, 285. These cases are against the authority of Mixon vs. Hyserott, 5 Johns. 58.

Where a person is engaged in a particular department of business and is employed to do an act within his line, *with special restrictions*, there the general powers, derivable from the nature of his ordinary employment, will control the limitation; he will be held to possess such in the *particular instance*, as his ordinary occupation fairly imports to the public: Nickson vs. Brohan, 10 Modern 109.

A general agency is an implied authority, derived from a course of dealing or from a number of acts of a particular kind authorised or assented to. Such a general authority authorises the agent to bind the principal without orders, in dealing with those who have no notice of the want of lawful power in the agent, and who act without collusion: See St. John vs. Redmond, 9 Porter 428; Stothard vs. Aull & Morehead, 7 Mo. Rep. 318; Williams et als. vs. Mitchell, 7 Mass. 98. In the case of the Commercial Bank of Lake Erie vs. Norton, 1 Hill 502, the court said: "It is not necessary in order to constitute a general agent, that he should have done before an act the same in specie with that in question. If he have usually done things of the same general character and effect, with the assent of his principals, that is enough. But beyond the regular course of his business employment, and the general nature of the acts done, the implied power of a general agent will not extend."

Bronson, Justice, in the case of Nelson vs. Corving, 6 Hill 338, said: "But a warranty, and so of a representation, is one of the usual means for effecting a sale of a chattel; and when the owner sells by an agent it may be presumed, in the absence of all proof to the contrary, that the agent has been clothed with all the usual powers for accomplishing the proposed end.

Mr. Justice Story, in his treatise on agency, page 126, lays down the general rule which is as applicable to special as well as to general agents, that "where the acts of the agent will bind the principal, there his representations, declarations, and admissions respecting the subject matter, will also bind him, if made at the same time and constitute a part of the *res gesta*." "For most purposes a party dealing with an agent, who is acting within the scope of his authority and employment, is to be considered as dealing with the principal himself."

In the case of Skinner vs. C. & R. Gunn, 9 Alabama 306, Ormond, Justice, said: "The power in this case is to sell and convey the negro in the name of the plaintiff, and the agent must, as an incident of that power, and in the absence of any prohibition, have the right to warrant the soundness of the slave, as that is an usual and ordinary stipulation in such contracts, and must therefore be implied to effectuate the object of the power: Fenn vs. Harrison, 3rd Term Rep. 757; Alexander vs. Gibson, 2 Campbell, 555.

Now, by applying the principles here laid down, and they are mainly expressed in the words of adjudicated cases, to the case before us, and it will be plainly seen that the court below erred in refusing the instructions containing the above principles, which were asked for by the plaintiff below—erred also in giving the converse of these instructions to the jury on the part of the defendants.

Here, the intestate, Ashley, in his life time, put a negro woman in the possession of one Curl, who was engaged in the business of buying and selling negroes. That was his ordinary employment; the negro woman was put there by her owner to be sold for him and on his account. There was nothing said about warranting her soundness or any thing else; no inhibition to warrant—no restriction upon the terms of the sale.

The agent, Curl, sold the negro woman to the plaintiff, and warranted her soundness, after trying to sell her without such warranty, and finding that the plaintiff would not purchase without a warrant, of soundness, he sold her and warranted her to be sound.

This act was one of the usual and ordinary means used in sales of such property—few persons are found willing even to purchase slaves' without such a warrant. In the language of Justice Bronson, "a warranty of soundness is one of the usual means of effecting a sale" of such a species of property.

The agent, Curl, therefore, was acting fully within the line of his usual employment in selling and giving a warranty of the slave, as to her soundness in this instance, and his acts are binding on his principal. The judgment below must, therefore, be reversed, and this cause

remanded to be proceeded in further, in accordance with this opinion, the other judges concurring.