DARST & HERCHELRODE *v.* SLEVINS & CALVERT.

(No. 9,320.)

1. Where there is a general agency the principal is bound for the act of the agent, provided what he does is within the ordinary and usual scope of the business which he is deputed to transact. An authority may be limited to a particular business, and yet general as to the mode of conducting that business.
2. An agency for the purchase of goods upon the credit of a principal may be created by really giving the authority to the agent, or representing to him that he is to have it; or by representing that the party making the contract is the agent of the defendant; or that such a relation exists as to constitute him such.
3. Such representations may be made by words or conduct directly to the plaintiff, or publicly made, so that it may be inferred to have reached him.

SPECIAL TERM.—This action is brought by the plaintiffs,

who are wholesale dealers in dry goods, doing business in Dayton, against the defendants, residents of Cincinnati, who are alleged to have been a firm doing a general retail dry goods and grocery business in Greenville, Darke' county. The claim of the plaintiffs is for goods sold and delivered. The goods were sold to, and received by Workman & Dailey, who were the agents of the defendants for conducting the business of the store at Greenville. There is no dispute as to the amount or value of the goods. The defense is that Workman & Dailey, as agents of the defendants, had no authority to buy such goods, so as to charge the defendants for the price; that they had no authority to buy on credit.

*Mills & Hoadly* and *O. A. Lyman*, for plaintiffs.

*Lincoln, Smith & Warnock* and *Jones & Burnet*, for defendants.

GHOLSON, J.  The modes by which an agency for the purchase of goods upon the credit of a principal may be created, have been frequently stated in the authorities. Such an agency "may be created by the immediate act of the party; that is, by really giving the authority to the agent, or representing to him that he is to have it, or by constituting that relation to which the law attaches agency; or it may be created by the representation of the defendant to the plaintiff, that the party making the contract is the agent of the defendant, or that such a relation exists as to constitute him such; and if the plaintiff really makes the contract on the faith of the defendant's representation, the defendant is bound; he is estopped from disputing the truth of it with respect to that contract; and the representation of an authority is, *quoad hoc*, precisely the same as a real authority given by the defendant to the supposed agent. This representation may be made directly to the plaintiff, or made publicly, so that it may be inferred to have reached him, and may be made by words or conduct." *Reynell* v. *Lewis*, 15 M. & W. 517, 527; Broom on Com. Law, 539.

An authority to purchase goods upon the credit of a principal, may or may not result from an agency of a certain kind or description, shown or admitted to exist. A difference is made between a general and a particular agency. 21 Wend. 279–280; 17 Ohio, 466–473. An authority may be limited to a particular business, and yet general as to the mode of conducting that business. Where there is a general agency, the principal is bound for the act of the agent, provided what he does is within the *ordinary and usual scope* of the business which he is deputed to transact. Broom Com. Law, 540. If the general agent pursue the usual and ordinary modes of transacting the business, the principal will be bound. 23 Wend. 260; 17 Ohio, 466. 6 Mees. & Welsb. 461, *Tredwen* v. *Bourne;* 8 id. 703, *Hawken* v. *Bourne.*

Such being the general propositions, upon the application of which, in particular cases, the decision must depend, I proceed to inquire how they affect this case, in view of the facts and circumstances established by the evidence. I am satisfied that no direct and express authority was given by the defendants to Workman & Dailey, to contract such a liability as the one claimed in this action. The authority can only be inferred from the general agency of Workman & Dailey in conducting a store for the defendants, or from the conduct of the defendants, as amounting to a representation that Workman & Dailey were authorized to buy goods upon a credit.

It can not be a matter of any doubt that it is, in the general nature of mercantile establishments, such as a country dry goods and grocery store, to deal on credit, for the purpose of carrying on their business. In this case it very clearly appears that the defendants established such a store, and appointed Workman & Dailey to carry it on, and that they did carry it on for several years, and upon a credit system, shown by the books of the concern, kept in the name of the defendants—the very claim now sued on being found upon those books. Such circumstances, unless explained,

are, undoubtedly, sufficient to fix a liability upon the principals.

Two explanations are offered: first, it is said, that neither of the principals knew of this dealing upon a credit. A business is established—agents are appointed to carry it on—to the eye of the public it is carried on for several years; the nature of the business is such that, for the carrying it on, credit is ordinarily used—in fact, credit is used, and the proprietors, after the close of the business, come forward and say that they did not know what was going forward in their own establishment, and what was entered upon their own books of account. I think, so far as persons dealing with such an establishment, in the ordinary course of business in similar establishments, are concerned, it was the duty of the defendants to know what their agents were openly doing on their behalf. Every one would naturally suppose that the defendants, having established such a concern, would, at least, so far look after it as to ascertain matters so obviously apparent, and would have a right, in dealing with the concern, to act upon such a belief. The rule that no man can take advantage of his ignorance, when it is his duty to have knowledge, may be properly applied to this case.

If, however, the plaintiffs knew that the agents had no authority, or the facts and circumstances attending the position and connection of the defendants and their agents, known to the plaintiffs, would clearly and properly lead to such a conclusion, then they can not recover.

The circumstance upon which most reliance is placed in this view, is that both the Slevins and Calvert were wholesale dealers in Cincinnati, and could have furnished from the store of one or the other the very goods sold by the plaintiffs. This circumstance loses very much of its weight from the consideration that the defendants, though connected in the country store, had no connection in their business in Cincinnati, and while most of the goods might have been obtained from the store of the one, very few, compar-

atively, would have been found in the store of the other. One dealt much more generally in goods proper for a country store than the other. While, therefore, it might appear strange if J. & J. Slevin did not furnish their own country store, it would not be equally strange that they should not furnish the store of Slevins & Calvert. Circumstances may be conceived in which they might not wish to do it, or might not be allowed to do it. I am not satisfied that such an inference was so clear, as necessarily to show to the plaintiffs a want of authority on the part of the agents. But if it should have been clear in the first instance, its force became diminished and its effect ceased, after a course of dealing which as before stated, the plaintiffs might properly have supposed was known to the defendants.

In view of all the circumstances, I do not see how the defendants can escape responsibility for the purchases of goods made in their behalf, and sold in their behalf, by their agents, intrusted with the general management of their business.

Judgment for the plaintiffs.