Marvin, J.
The- defendant was only allowed, by law, to exact and receive two cents a mile for the fare of a passenger, except as modified by the act of' 1857, chapter 228, by which it is declared that if any person shall, at any station where a ticket office is established and open, enter the cars of the said company, as a passenger therein, without having first purchased a ticket for that purpose, it shall be lawful for the said company to demand or receive from such person a sum, not exceeding five cents, in addition to the usual rate of fare for the distance such person may desire to be transported. The plaintiff’s case did not come within the provisions of this statute. The ticket office was not open at the station where, and the time when, the plaintiff entered the cars as a passenger. The defendant, therefore, had no, right to demand and *517 receive from the plaintiff the five cents in addition to the usual rate of fare.
By the act of 1857, chapter 185, it is declared that “ any railroad company which shall ask and receive a greater rate of fare than that allowed by law, shall forfeit fifty dollars; which sum may be recovered, together with the excess so received, by the party paying the same.” The defendant was required to carry way passengers on its road “ at a rate not exceeding two cents per mile.” (Act of 1853, ch. 76, § 7.)
It was argued, with much ingenuity, that the conductor did not ask and receive a greater rate of fare than that allowed by law; that he only demanded and received the five cents in addition to the usual rate of fare, basing the claim upon the ground that the plaintiff had entered the cars as a passenger, without having first procured a ticket for that purpose; and that, although the claim may not have been well founded, still the money not being demanded and received as “ a greater rate of fare than that allowed by law,” to wit, two cents per mile, the defendant could not be made liable to the penalty given by statute, for demanding and receiving these five cents.
This position is attempted to be sustained by a reference to authorities in support of the rule that penal statutes are to be construed rigorously. The position and argument of the counsel are not satisfactory. The great, leading rule for the construction of statutes is, to ascertain fairly the intention of the legislature in enacting the statute. In statutes giving a penalty, if there be reasonable doubt of the case, made upon the trial or in the pleadings, coming within the statute, the party of whom the penalty is claimed is to have the benefit of such doubt. The criticism in this case is upon the words “ greater rate of fare,” as used in the statute giving the penalty. The requirement in the act of 1853 is, that the railroad company shall carry way passengers at a rate not exceeding, &c. Here the word rate means price, amount; and the adding of the words “ of fare ” after the word rate would have produced tautology, and, perhaps, ambiguity, and certainly a very inaccurate sentence, as will be perceived upon considering the mean *518 ing of the word fare. It is, the price of passage, or the sum paid or to he paid for carrying the passenger. The word itself included the idea of being carried as a passenger. This idea of carrying the passenger had found a place in the sentence, by the use of' the languagé, the “ company shall carry way passengers at a rate not to exceed,” &c. Had the words “of fare” succeeded the word rate, there would have been a repetition of the idea of carrying the passenger, and- the construction of the clause would have been, that the company shall carry way passengers on their road at a rate [price] of the price of passage, or, the sum paid for carrying the passengers not to exceed two cents per mile. If we should give to the word rate its primary meaning, “proportion,” or “standard,” it would then read, the company shall carry way passengers on their road at the proportion or standard of the price of passage, or the sum paid for carrying the passengers, not exceeding two cents per mile.” The language of the statute, giving to the word rate the meaning of price, is perspicu- • ous and well chosen.
It will be noticed that in the act of 1857, giving the penalty, there are no words other than the word fare, including the idea of the carrying of a passenger. The words are “any railroad company which shall ásk and receive a greater rate of fare than that allowed by law, shall forfeit fifty dollars.” The “party paying ” may recover the penalty. Unless we take the idea of the carrying of a passenger from the word fare, we shall not get it at all in this statute. And yet no one can doubt that the- design of the statute was to give a penalty for asking and receiving a greater rate or price for the carrying of a passenger than was allowed by law. We must, therefore, take the idea of carrying a passenger from the word fare. This statute has reference to the statutes in which the rate for carrying passengers is fixed and allowed, and the statute relating to the defendant, expressly required it to carry way passengers at a rate not to exceed two cents per mile. The words used in this statute “ greater rate of fare ” are not happily chosen, but there is no difficulty in construing them. *519 As the word fare includes the idea of price and passage, the word rate to avoid tautology, may be construed as meaning proportion or standard, and the clause' read, a greater proportion or standard of the price of passage, or sum paid for carrying the passenger than that_ allowed by law, shall forfeit fifty dollars. The proportion of price to the mile, in the present case, was not to exceed two cents; the standard by which the value is fixed for carrying a passenger one mile, is the price or sum paid not to exceed two cents. Thus, by the most strict and rigid rules of construction, the statute means that any railroad company which shall ask and receive a greater price for the carriage of a passenger than that allowed by law, shall forfeit fifty dollars; and what is more, it cannot, by any reasonable construction, be made to mean anything else. And as this company was only allowed to receive a price for carrying a passenger not to exceed two cents per mile, the statute embraced the plaintiff’s case, provided the sixty cents were asked and received for his carriage as a passenger. It is argued that the usual fare, fifty-five cents only was taken, and that the five cents were received on a claim other than for fare, to wit: the want of a ticket, which claim may have been unlawful and the five cents may be recovered back. The referee found that the conductor demanded sixty cents as and for fare, and the plaintiff claimed that he ought to pay no more than fifty-five cents, the usual fare, and the conductor demanded sixty cents “ claiming five cents in addition to the usual rate of fare.” The entire sixty cents were claimed ás the price for carrying the plaintiff as a passenger, and there was no consideration other than carrying him as a passenger for the sixty cents. It is quite probable that the conductor supposed that he had the right, by the act then recently passed, to exact five cents in addition to the usual fare, and suppose he had been right and was entitled to receive the additional five cents, for what would it be received ? What would it be in the hands of the conductor ? Clearly it would be received as fare, and it would be fare money in his hands; and, as such, belong to the company. Under certain circum *520 stances the company had a right to demand and receive fifty five cents fare, and under other circumstances, five cents in addition, making sixty cents.
It is insisted that the referee erred in deciding that the defendant was liable to the penalty for the act of the conductor without proof of any express authority conferred on him by the defendant, to ask and receive the five cents. The conductor was the agent of the defendant to demand and receive the fare, or price for carrying the plaintiff as a passenger and in making such demand and receiving the price, he acted within the scope of his employment, and the rule, respondeat superior, applies. (Story Ag., § 452, et seq.; Paley Ag., 294-298; Smith Mer. Law., 111, 127, 133.) The agent was employed to o collect fare, and it was within the implied scope •or course of this employment that he specified the sum he claimed as fare. There would be no safety to passengers, unless railroad companies in such á case, should be held responsible for the acts of their agents. The authorities carry this principle much further than it is necessary to go in this case. (Story Ag., 452; Jeffery v. Bigelow, 13 Wend., 518; Sandford v. Handy, 23 Wend., 260.)
The cases cited by the plaintiff’s counsel, are not in point. 'They relaté to cases of willful trespass committed by the agent, •or to acts done by him outside of the scope of his employment.
In this case the agent undoubtedly acted in good faith, supposing he had authority to demand and receive the whole sixty cents, instead of only fifty-five cents. The judgment should be affirmed.
Rosekrans, J,, expressed no opinion; all the other judges ■concurring,
Judgment affirmed.