## Allison *against* Matthieu.

NEW-YORK,
May, 1808.

Allison
v.
Matthieu.

THIS was an action of *trover* for certain articles of furniture. The cause was tried at the last *Sittings* in *New-York*, before Mr. Chief Justice *Kent*.

At the trial, it was proved that the defendant and one *Le Blanc*, about the 1st of *October*, 1804, came to the shop of the plaintiff, who is a cabinet-maker, when the defendant said to the plaintiff, that *Le Blanc* wished to buy some furniture. They selected several valuable articles, (amounting to 389 dollars and 50 cents) which by their directions were packed up and sent to the house of the defendant, on the 6th of *October*, 1804, which, according to the entry in the plaintiff's books, was the day of sale. The defendant and *Le Blanc* told the plaintiff that the furniture was to be shipped to *Martinique*, and the defendant observed that *Le Blanc* was an *alien*, and that it could not be shipped in his name. *Le Blanc* was a stranger; the defendant lived in the city, and selected most of the articles. He told the plaintiff that he need not be afraid of *Le Blanc*, as he was very rich. *Le Blanc*, a short time after, absconded.

The plaintiff then offered to prove, that the defendant and *Le Blanc* had, about the same time, obtained goods from several other persons, on similar representations, which goods had passed into the possession of the defendant. This evidence was objected to by the defendant's counsel, but admitted by the judge. [This evidence, which it is unnecessary to state here, was detailed in the case, and related to transactions of the defendant and *Le Blanc*, about the 5th of *November*, 1804, and went to show a combination between them to obtain property fraudulently from two persons of the name of *Ross* and *Stollenwerck*.].

The plaintiff also proved, that on the 5th of *November*, 1804, *Le Blanc* made a general assignment to the defendant of all his furniture, including the articles in

Where A. and B. applied to C. to purchase goods for A. who was recommended by B. and by their direction the goods were sent to B.'s house, who afterwards took a bill of sale of them from A. who absconded without paying C. it was held, that C. in an action of trover against B. might go into evidence to show, that the goods had been obtained from him fraudulently, and by a collusion between A. and B. under pretence of a purchase, for fraud would avoid the contract of sale; and that the plaintiff might give evidence of subsequent acts of collusion and fraud by A. and B. to obtain goods from other persons, in order to show the previous intention of A. and B. which the jury might infer from circumstances.

question, for the consideration of 1,165 dollars, which was executed in the afternoon of that day, when he absconded, but he was afterwards apprehended, and convicted of forgery.

The judge charged the jury, that if they were satisfied from the evidence, that at the time Le Blanc obtained the furniture from the plaintiff, there was a combination between him and the defendant to defraud the plaintiff of his property, that then the property did not pass, and the plaintiff would be entitled to recover. That the falsehoods uttered by the defendant at the time of the purchase, and his getting the property into his own possession were circumstances to show fraud ; but if, on the other hand, the sale was fair at the time, and without any collusion between the defendant and Le Blanc, that then there ought to be a verdict for the defendant. The jury found a verdict for the plaintiff for the amount claimed by him.

A motion was now made to set aside the verdict and for a new trial.

1. Because the form of action was improper.

2. Because the evidence of subsequent acts of collusion and fraud between the defendant and Le Blanc, was inadmissible.

3. Because the verdict was against evidence.

Edwards and Baldwin, for the defendant. From the evidence given at the trial, this appears to be an action for a deceit, rather than an action of trover. The defendant could not be expected, on a declaration in trover, to come prepared to meet allegations of fraud and deceit. The plaintiff, if he meant to have proceeded on such ground, ought to have brought an action on the case. The defendant is taken by surprise, from this mode of proceeding.

The transactions of the defendant and Le Blanc, with Ross and Stollenwerck, were four or five weeks subsequent to the purchase of the furniture of the plaintiff. Acts so remote and disconnected, can never be evidence of fraud

in a former transaction with another person. If intended to impeach the character of the defendant, it was improper. It could not be expected that he could anticipate such an attack, or that he should be prepared to meet it. The character of a party, unless put in issue, can never be impeached in this way, by going into evidence of all the transactions of his life.

*Riker* and *Emmet*, contra. Fraud will vitiate and avoid every act, however fair in appearance, and though clothed with the forms of law.* If the property, at the time of the purchase, did not pass from the plaintiff, then trover is maintainable. The plaintiff may go into evidence of fraud to avoid the sale, and to show that the property did not pass. Fraud can never be covered and protected by the forms or process of law. After a regular sale and delivery of goods, if the vendor can show that they were obtained fraudulently, he may stop them *in transitu.*† An action on the case in the nature of *deceit*, will lie only against the vendor, who has practised some deception in the sale. *Trover* is the proper form of action to try the title to personal property. The defendant must always come prepared to show his own right to the goods, or that the plaintiff has no property in them. There is no pretence that the defendant is taken by surprise. In *ejectment*, as to real property, and in every other action which brings the title in question, the defendant must come prepared to meet it. If the plaintiff was at liberty to show that no property passed on account of the fraud, then the evidence given was admissible. It was proper to show a fraudulent combination between the plaintiff and *Le Blanc*, to obtain the possession of goods, by false representations, and under the form of a contract of sale. Fraud, in almost every case, is to be proved by circumstances. One fact is proved, from which an inference may be fairly made in relation to another fact. Thus in a criminal case, on an indictment for the forgery of a bank note, the prosecutor was allowed to give evidence of other forged notes having been passed by the prisoner, in order

* *Bac. Ab.* tit. *Fraud,* (A.) *Carth.* 3, 4. 2 *Inst.* 108.

† *Hollingworth* v. *Napier*, 3 *Caines,* 183.

NEW-YORK,
May, 1808.

Allison
v.
Matthieu.

* 1 *Bos. & Pul.*
(new series)
92. *King* v. *Wy-lee.*
† 2 *Hen. Black.*
288.

to show his knowledge of the forgery.* In the case of *Gibson* v. *Hunter*,† which was on a bill of exchange, drawn by *A.* upon *B.* payable to a fictitious person, evidence was admitted of irregular and suspicious transactions and circumstances relating to other bills drawn by *A.* on *B.* payable to fictitious payees, and accepted by *B.* in order to draw an inference that *B.* at the time, knew the payee to be fictitious, or that by having given a general authority to draw such bills, he had also authorised the drawing of the bill in question, though none of the transactions or circumstances had an apparent relation to the bill on which the action was brought. It is true, the general character of the party is not to be attacked by evidence in this way, but that was not the case. The evidence was introduced to show, from the conduct of the defendant and his connection with *Le Blanc*, an intention to deceive and defraud the plaintiff. The fact in issue is not proved by this evidence, but it serves to show the *quo animo*, the knowledge or intention of the party, from which every reasonable mind may infer the fraud or criminality.

The objection, that the verdict was against evidence, is addressed to the sound discretion of the court, which will derive little aid from the comments of counsel.

*Per Curiam.* The action is clearly maintainable. As fraud would vitiate and avoid the sale, it was competent for the plaintiff to go into evidence of the fraud. The question was, under what circumstances, and with what *intention* the defendant acquired the possession of the property; or, in other words, whether the property passed from the plaintiff? For this purpose the evidence was admissible. It is not pretended that it would not be good evidence against *Le Blanc;* and if so, it was admissible to show that the defendant was connected with him in the transaction, and privy to the fraud; and therefore had no right to the property of which he had thus obtained the possession. As to this being a verdict

against evidence, it would, perhaps, be enough to say, that the judge before whom the cause was tried was satisfied with it; but it appears to us, that the verdict is well supported by the evidence.

We are, therefore, of opinion, that the plaintiff must have judgment.

Rule refused.