ALBANY,
January, 1818.

VAN CLEEF
v.
FLEET.·

## VAN CLEEF AND OTHERS *against* FLEET.

THIS was an action on the case for a false return to a *fi. fa.*, brought against the defendant, late sheriff of the city and county of *New-York.* The cause was tried before Mr. J. *Platt*, at the *New-York* sittings, in *December*, 1815.

*Morris* and *Ryer* executed to the plaintiffs a bond, conditioned for the payment of 8000 dollars, and a warrant of attorney to enter up judgment thereon, which were dated the 26th of *July*, 1813, and judgment was entered on the 6th of *August*, on which day an execution was delivered to the defendant, and he was directed to levy the sum of 7,107 dollars and 70 cents. The defendant returned to the execution, that he had levied and paid to the plaintiffs the sum of 3,225 dollars and 4 cents, and as to the residue, *nulla bona.* It was admitted, on both sides, that other goods had been seized and taken, in the store occupied by *Morris & Ryer,* but which had been claimed by certain of their creditors, for whose benefit this suit was defended, and delivered up to them.

The defendant's counsel, at the trial, offered in evidence an inquisition, taken by the defendant, on the 20th of *August*, 1814, finding part of the property levied on, to be the property of *Schuyler & Bradford*, two of the creditors of *Morris & Ryer.* This evidence was objected to on the part of the plaintiffs ; and their counsel read a letter to the defendant, dated the 2d of *September*, 1813, in which they express their intention not to attend the trial of the claims of property before him, and conclude, " We have now again to desire you to proceed to the sale of the goods levied on, including those claimed by *Schuyler & Bradford*, and we are ready to indemnify you for so doing to your entire satisfaction. Should you decline to sell on the obove terms, the refusal must be at your own peril, as must be whatever other steps you choose to take in this business ; as we wish you distinctly to understand that we hold you responsible for the goods levied on, and in your possession unsold." The

*An inquisition taken by a sheriff on a claim of property, in goods levied on under an execution, is not conclusive of the right of property, although it may excuse the sheriff for not proceeding to sell, and for returning nulla bona. But if the plaintiff in the execution, offer, in writing, to indemnify the sheriff, he is bound to proceed and sell, and cannot excuse himself, by taking an inquisition. When a debtor confesses judgment, and, afterwards, fraudulently purchases and procures to be delivered goods, without paying for them, with intention to subject them to the execution of the judgment creditor, the title to the goods does not become vested in the purchaser, and they, therefore, cannot be taken on an execution against him.*

judge overruled the objection, and the inquisition was admitted in evidence. The plaintiffs' counsel then disclaimed any intention of charging the sheriff beyond the actual value of the goods; and when the inquisitions relative to the claims of the other creditors were offered in evidence, they were, on that ground, rejected by the judge. It was proved, on the part of the defendant, that several of the goods in question, were purchased to be paid for, in cash, between the 26th of *July*, 1813, when the bond and warrant of attorney were dated, and the 6th of *August*, when judgment was entered. It was also proved, that on a *Sunday* in *July*, or *August*, 1813, before the purchases from the different claimants, an inventory was taken, in the store of *Morris & Ryer*, by them, and *Moores*, one of the plaintiffs, and his clerk: that, afterwards, *Weed*, one of the claimants, sent his clerk to purchase a piece of goods that *Morris & Ryer* had before bought of him: that *Morris* asked a price which the clerk did not think proper to give until he had consulted with *Weed*; and after he went away, *Morris* put the goods into a drawer, and directed his clerk to tell *Weed's* clerk, if he returned, that he had sold them to *Moores*, who was then present: that on the 5th of *August*, *Lovel*, another of the claimants, repurchased of their clerk goods which he had sold to *Morris & Ryer*: and that *Moores* came to the store and asked the clerk if he had sold goods to *Lovel*, to which, on his replying that he had, *Moores* abused the clerk.

The defendant's counsel offered to prove various sales between the 26th of *July*, and the 6th of *August*, for cash, but which was never paid; and offered other evidence of fraud in the transaction. The judge overruled the testimony, and declared that the frauds of *Morris & Ryer* could not affect the plaintiffs unless they were privy to them, or had combined to commit them, of which there was no evidence to go to the jury; and that he should charge the jury that in judgment of law, the plaintiffs were entitled to recover. A verdict was taken for the plaintiffs, by consent, subject to the opinion of the court.

*Colden*, for the plaintiffs. We are aware that the court

in *Bayley* v. *Bates*, (8 *Johns. Rep.* 185.) decided that the inquisition will excuse the return of *nulla bona*, where the sheriff acts *bona fide ;* but the court intimate, in that case, that if the sheriff should refuse an adequate indemnity offered by the plaintiff, he would be bound to proceed and sell, or be liable for a false return. Here was a written offer of indemnity, and the sheriff ought to have stayed proceedings on the writ of inquiry, until he had inquired whether the security offered was adequate. He has not acted with impartiality, or *bona fide.* If there was any fraud in *Morris & Ryers,* the plaintiffs were not privy to it.

*Hoffman,* and *T. A. Emmet,* contra, relied on the case of *Bayley* v. *Bates,* the principles of which were fully recognised in *Townsend* v. *Phillips.* (10 *Johns. Rep.* 98.) They contended, that the power of calling a jury to inquire as to the property, is given to the sheriff merely for his protection, and for no other purpose ; it is not intended for the benefit of the party. The inquisition, when taken, is perfectly conclusive as regards the sheriff. He is not bound to accept an indemnity, but certainly nothing short of the most ample security.

But, further, no property was vested in *Morris & Ryer.* The transaction was fraudulent, and the plaintiffs were privy to the fraud. In *Allison* v. *Matthieu,* (3 *Johns. Rep.* 235.) where goods were obtained fraudulently, and by collusion, under a pretence of purchase, the court say, that the fraud avoided the contract of sale. (The counsel here discussed the facts in the case.) The plaintiffs were not *bona fide* purchasers. The sheriff was commanded to seize the goods of *Morris & Ryer,* and if the goods in question were not the property of *Morris & Ryer,* the plaintiffs could acquire nothing by the execution.

*Wells,* in reply. The inquisition does not determine the question of property. It is a mere precautionary measure of the sheriff to protect himself from vindictive damages. The real owner, notwithstanding the jury of inquiry may find the property to be in the debtor, may bring his action against the sheriff, and if he proves his right to the

goods, he will be entitled to recover the full value of them from the sheriff. Then, if the inquisition be not conclusive when found in favour of the plaintiffs, why should it be so when found against them? There is no reciprocity, nor consistency in making it a bar in one case, and not in the other. In *Townsend* v. *Phillips*, the court say the plaintiff could not justify himself, by the inquisition, for taking goods which did not belong to the party against whom the execution issued. But if it is a bar, it must be so on certain conditions, or under certain circumstances; as, where the plaintiff has submitted to the inquiry, though he is not bound to do so, or where he is passive, and tells the sheriff to proceed at his peril. Not so, where he protests against a jury of inquiry, and tenders indemnity to the sheriff. In the case of *Bayley* v. *Bates*, it does not appear what was the indemnity offered. No doubt the court must have considered it insufficient. If to a verbal offer of indemnity, the sheriff should answer, that he will take no security at all, the plaintiff, clearly, would not be bound to tender any, and the sheriff would proceed at his peril.

Again; the sheriff might have applied to the court for instructions how to proceed. He might have filed a bill of interpleader. He might, even after the inquisition, have gone on and sold the property, and held the proceeds subject to the order of the court.

It is true that fraud may be inferred from circumstances, but they must be such circumstances as lead irresistibly to that conclusion. Fraud is never to be presumed. The jury are not authorized to speculate and conjecture as to facts and motives. There was not enough shown to let the cause go to the jury, for the purpose of finding whether there was fraud or not.

VAN NESS, J. delivered the opinion of the court. The inquisitions of the 2d of *September* were properly rejected, the plaintiffs having confined their claim of damages to the actual value of the goods. Such inquisitions are not conclusive on the question of property, though, in some cases, and under certain qualifications, they will excuse the sheriff for not proceeding to sell and protect him from a suit for a

false return.   This was so decided in the case of *Bayley* v.
*Bates;* (8 *Johns. Rep.* 185.;) but it is there strongly intimated,
that if the sheriff should refuse an adequate indemnity, the
court would hold him bound to proceed and sell.   Many of
the cases cited in *Bayley* v. *Bates* show, that if the plain-
tiff in the execution tender an indemnity to the sheriff, it is
his duty to proceed.   It would be intolerable to consider
these inquisitions as decisive of the right of property, con-
sidering the manner in which they are taken, and the great
abuse to which such a proceeding is liable.   I well recollect
that in the case of *Bayley* v. *Bates* the offer to indemnify the
sheriff was verbal, and very loose and unsatisfactory, and not
such as the sheriff had a right reasonably to exact; and that
it was for that reason the sheriff was held to be excused for
returning *nulla bona*, after he had held an inquest.   Here
the tender of indemnity was made in writing, with all due
solemnity, and in such a way as ought to have induced the
sheriff to proceed in the sale.

The evidence of fraud in *Morris* and *Ryer* was very
strong, and there was, also, some evidence to show that
*Moores*, one of the plaintiffs, was privy to it.   I think there
was sufficient evidence to entitle the defendant to the opinion
of the jury upon it, and that the learned judge should have
submitted this part of the case to them.   It was by no
means so clear a case for the plaintiffs as to entitle them,
" in judgment of law," to a verdict.   On this ground, with-
out noticing some minor points which have been discussed,
I think that there ought to be a new trial.

It may be proper, however, to remark that, if on a future
trial of this cause the jury shall be satisfied that *Morris* and
*Ryer* obtained the goods in question by fraud, that then,
according to the doctrine established in the case of *Allison*
v. *Matthieu,* the title to the goods never was vested in them,
and they, consequently, were not liable to be taken in
execution to satisfy the judgment in favour of the plaintiffs.

New trial granted, with costs, to abide the event of the
suit.