Oakley, J.
On the trial of this cause, one David Davies was introduced as a witness, by the defendants. The plaintiils, with a view to rebut his evidence, offered a bill in chancery, filed by him, which contained allegations contradictory to his testimony on the present occasion. The witness stated, that the bill had been filed by his counsel, and that he believed his counsel had stated to him what he intended to insert in it, but that he, (the witness,) had never read it. The bill was'not signed or sworn to by the witness, but was admitted in evidence, although objected to by the defendants.
The general rule seems now to be, that a bill in chancery will not be evidence of the facts stated in it, against the party filing it, although it is evidence to show the fact, that such a bill has been filed, in order to introduce the answer, or the depositions of witnesses. [1 Phil. Evi. 263. 7 Term R. 2. Case of the Bunbury Peerage, 2 Stark. Evi. 286, in notis.] In the present case, it could have no effect, except to discredit the witness, by showing that he had made declarations and statements in conflict with his testimony on this trial. If the bill had been sworn to, or signed by him, it might have been set up as his written statement of facts; but in its present shape, it can only be considered as the suggestions of his counsel. Though his counsel may have told him what he intended to insert in the bill, there is nothing to show that it was, in fact, drawn according to the information thus given, and it might have contained many averments, of which the witness was entirely ignorant. In any view of the matter, it does not appear to me that the filing of 'the bill is shown to be so far the personal act of the witness, as to charge him with the knowledge of the statements it contained. It was, therefore, in my judgment, improperly admitted in evidence.
2. The Judge, without the consent of the defendants, and notwithstanding objections interposed by them, directed the jury, if they found for the plaintiffs, to find a nominal sum, sufficient to cover their demand, subject to a reference to liquidate the ao *445 counts, and ascertain the balance. The defendants now object to this as irregular.
I am not aware, that either with us, or in England, the courts have claimed a right, without the consent of the parties, to direct such a verdict. It is a practice very convenient, and it is much to be desired, that the courts should possess authority to adopt it. But the right to refer a cause at all, depends upon the statute, and that clearly contemplates only references to be made before the trial. If the parties put themselves upon the jury and go to trial, each has a right to submit his whole case to them, and all that the court can do, if it becomes apparent that the trial will require the examination of long and intricate accounts, is to discontinue it, and direct an application for a reference in the usual mode. There would seem, therefore, in this respect, to have been an irregularity at the trial of this cause, and this nominal verdict cannot be .permitted to stand.
Though, for the reasons above stated, a new trial must be granted, still it will, no doubt, be useful to the parties, to dispose of the main question on which the cause must finally depend.
The declaration contains the common counts in assumpsit, to which the defendants pleaded a release under the seal of the plaintiffs. The plaintiffs replied, that the release was “had and obtained from them, by the fraud and covin of the defendants,” on which issue was joined. At the trial, the plaintiffs, to support this issue, offered to show fraud, on the part of the defendants, in the consideration on which the release was founded. The defendants contended, that the proof ought to be confined to fraud, in the execution of it only, and that if such fraud was not shown, the release was a flat bar at law. The Judge permitted the plaintiffs to go into the evidence offered, and they proceeded to prove, that the plaintiffs were creditors, to a large amount, of the defendants, that a negotiation between them was set on foot, and continued for a considerable time, for a compromise of the debt. That mutual releases were finally executed, and that in the course of the negotiation, the defendants made certain false and fraudulent representations of their situation and property, whereby the plaintiffs were deceived into a compromise of their debt, at a much *446 lower rate, than they otherwise would have accepted, and much lower than the defendants were in fact able to pay, and that the release in question, was executed in consequence of such false and fraudulent representations.
The question now is, whether this evidence was admissible, under the issue joined in the cause.
It is contended on the part of the defendants, that the only fraud which can be pleaded at law, to avoid a deed, is fraud in its execution ; such as a fraudulent reading of it, or the substitution of one instrument for another, or the obtaining, by some device or fraudulent representation, such an instrument as the party did not intend to give. On looking at the cases decided by the Supreme Court, it seems to me, that the position of the defendants’ counsel is fully supported.
In Vrooman v. Phelps, [2 J. R. 177,] the action was covenant on an obligation for the payment of money: The defendant pleaded, specially, that the consideration of the covenant was the purchase of a slave, and that the plaintiff fraudulently and falsely represented the slave as honest, &c. To this plea there was a demurrer. The court held the demurrer well taken, and they lay down the principle broadly, that “parol representations as to the “quality of a thing, made antecedent to the contract, though false “ and fraudulent, and though they may have induced the defendant to “make the purchase" cannot be pleaded to avoid a specialty. In Dorr v. Munsell, [13 J. R. 430,] the defendant pleaded to an action of debt on bond, that the plaintiff fraudulently obtained it, by representing himself to be the patentee of a certain improvement in the manufacture of cloth, and that he was the original inventor, when in fact, it had been previously patented to another, and the plaintiff was not the inventor, and that the defendant was induced by such fraudulent representations to execute the bond, which was given for a right to use the said improvement, &c. To this plea there was a demurrer, which was sustained. The court recognized the authority of Vrooman v. Johnson, and again said, that, at law, the defendant cannot avoid a solemn deed, on the ground of a want of con *447 sideration, and that the inquiry is precluded by the nature of the instrument.
In Franchot v. Leach, [5 Cowen's R. 506,] the action was covenant, on an agreement by the plaintiff, to sell and convey a lot of land, for a certain sum of money, agreed to be paid by the defendant The defendant offered to prove, that he purchased the lot for the purpose of a distillery, which the plaintiff knew, and falsely represented to the defendant, that a stream of water, running through the lot, was sufficient for that purpose, knowing the contrary to be the truth. The evidence was rejected, and the court held, that it was properly rejected. They said, that the case of Dorr v. Mmsell was in point, and they state the principle to be> that the fraud, which “avoids a deed, is not a fraudulent represen» “ tation as to the consideration, but a fraud relating to the execu- “ tion of it, as a fraudulent misreading, or obtaining such an instrument as the obligee did not intend to give.”
In Jackson ex dem. Church v. Hills, [8 Cowen’s R. 290,] the plaintiff sought to recover, by virtue of a lease under seal, from the defendant. The defence was, that the lease was obtained by certain fraudulent representations, as to a part of the consideration or inducement to the making of the lease. The court held, that this defence could not prevail, and they adopt the principle, in terms, that “ if the consideration of a specialty, be unlawful or corrupt, it is “ void ab initio, and may be pleaded, but that the mere failure or “ want of consideration, is not sufficient, at law, to avoid a spe- “ ciality.” The court, in that case, revised all the preceding cases, and recognized the principles upon which they were decided, and in reference to the case then before them, Sutherland, J. who delivered the opinion, said, that the lease in question, was executed upon an adequate consideration, “ with full knowledge, on the “ part of the lessee, of what she was doing, and of its legal effect “ and operation, but under a misapprehension as to a collateral “ circumstance, occasioned by the false and fraudulent representations of the lessee. I know of no principle,” says the Judge, “ on which such a lease can be avoided at law.”
The result of all these cases seems clearly to be, that when the consideration of a deed is not illegal or corrupt, so as to render it *448 void, ab initio, and when it is executed, understanding^, and with a knowledge of its legal import and effect, no plea at law can impeach it. The party is concluded by the nature of the instrument, and cannot be permitted to aver any thing against it.
In the case now before us, the release in question was executed upon an “ adequate consideration,” to wit, the money paid by the defendants, and the release given by them to the plaintiffs. It was executed deliberately, and with a full knowledge of its legal effect, but under a misapprehension as to the ability of the defendants to pay their debts, induced by the false and fraudulent representations of the defendants. The case seems in all respects, to fall within the principles laid down in Jackson ex dem. Church v. Hills, and must, in my judgment, be governed by them. I have not deemed it necessary, to enter into an examination of the numerous English cases,- cited by the plaintiffs on the argument. I consider the principles, which, must govern us, as fully established in our own courts.
The remedy of the plaintiffs, is in the Court of Chancery. That court, in the case of Irving v. Humphrey, [1 Hop. R. 284,] recognized it as a settled rule, that if a debtor, upon a compromise with his creditors, make any material false representation, as to his property, it will avoid any deed, by which the creditors may have discharged him. But in such cases, that court does not always set aside the compromise entirely, but will order the debtor to account for any property which he may appear to have concealed. Relief will be granted in that court, according to the circumstances of the case, and the rights of all the creditors will be protected. In the case we are now considering, there is one feature which shows, in a peculiar manner, the reason why it should be turned over to a Court of Equity. The release executed by the defendants to the plaintiffs, must, for any thing I can see, be valid at law, though the plaintiffs were on this occasion to succeed in avoiding the one executed by them. There was clearly no fraud of any kind^on the part of the plaintiffs in obtaining it, and the only plea, which at law the defendants could interpose against that release, if set up by the plaintiffs on some future occasion, would be a mere failure of the consideration, on which it was executed. *449 This most clearly could not be done, without overturning all the cases on the subject. In the Court of Chancery, the rights and interests of all the parties can be duly guarded, and if the plaintiffs should succeed in avoiding the compromise with the defendants, they would, at the same time, be compelled to cancel the release to themselves. That they offered to do so, in the present case, cannot affect or extend their rights at law, as the offer from the nature of the proceedings at law, must be considered merely as voluntary.

New trial granted.

[J. W. Gerard, Att’y for the plffs. Wells and Bushnell, Atty's for the defts.]