## Case No. 3,688.

DAY v. NEW ENGLAND CAR-SPRING CO.

[3 Liv. Law Mag. 44.]

Circuit Court, D. New York. Oct., 1854.

ADMISSIBILITY OF PAROL EVIDENCE TO SET ASIDE A SEALED INSTRUMENT—RIGHTS OF ASSIGNEES.

1. In a suit for the infringement of a patent right, the defendants, to defeat the plaintiff's claim, alleged an assignment made to the defendants by William Judson, as the trustee and attorney of E. M. Chaffee, the patentee. *Held,* on the trial, that it was competent for the plaintiff to introduce evidence to show that the instrument from Chaffee to Judson was obtained by means of fraudulent representations and practices, and that the plaintiff might impeach such instrument, and prevent its operation in the case against him, by proving that it had been so procured by Judson from Chaffee.

2. An assignee claimed to be a purchaser without notice of fraud, and for a valuable consideration, and therefore exempt from the general rule allowing his title to be impeached the same as when in the hands of the vendor. *Held,* that the fact of his being an innocent purchaser must be proved to and found by the jury.

[This was an action at law by Horace H. Day against the New England Car-Spring Company for an injunction of the alleged infringement of a patent. A motion to strike out the special pleas filed by defendants was heretofore denied. Case No. 3,687.]

BETTS, District Judge. On the trial of the above cause in this court at the last term, points of law as to the admissibility and competency of parol evidence were raised, and, after a labored discussion by counsel, were decided by the court adversely to objections taken by the defendants' counsel. The court at the time stated orally its views of the law applicable to the case, but intimated that, because of the earnestness and confidence with which the objections to the testimony had been urged, the reasons governing the decision, with a reference to authorities supposed to support it, would be given in writing at the earliest opportunity. The trial continued several weeks subsequently, and was terminated suddenly in midsummer by the death of one of the jurors empaneled in the cause. My absence from the city after that until September, and the pressure of more urgent avocations since my return, have withdrawn my attention from the subject, until, finding the cause upon the calendar for trial at this term, and probably to be tried before me alone, when the same question will doubtless again arise, I have thought it proper to put in writing now the reasons which influenced the former decision, and which will probably induce me to adhere to it until the points can be solemnly considered at term.

The suit was to recover damages for an alleged infringement of extended letters patent. A patent originally granted to Edwin M. Chaffee was renewed, and extended to him for a term of seven years from the 30th of August, 1850. On the 1st of July, 1853, the patentee assigned all his right in the patent to the plaintiff. The defendants were proved to be using the patented right in this city, and that it was of great value in the aid of the manufacture of India-rubber goods. The defendants claimed the right to such use under a license or assignment made to them in writing by William

Judson, under his hand and seal, for the consideration of $20,000, and bearing date November 20, 1851. The license by recital stated the issuing of the original letters patent to Chaffee, August 31, 1836, their extension to him for seven years from the expiration, and added: "And whereas said Chaffee, by an article under hand and seal, and dated the 5th day of September, 1850, upon the consideration and for the purposes therein expressed, did nominate, constitute, and appoint William Judson his trustee and attorney irrevocable, to hold said patent, and have the control thereof, as therein provided,"—then added the granting clause as follows: "Now, therefore, I, the said William Judson, in consideration of $20,000 to me in hand paid, do give and grant to the New England Car-Spring Company a full, absolute, and exclusive license to use the improvements secured to said Chaffee in and by said patent, and so extended as aforesaid, in the manufacture of India-rubber springs," etc., etc.,—embracing the business pursued by the defendants. George Woodman was the subscribing witness to the article of Sept. 5, 1850, referred to in the above license, and was called by the defendants to prove its execution. He was examined, with guarded precision of language and interrogatory, as to those particulars which constitute the formal execution of an agreement in writing under seal; that is, to the presence of the witness and of the the parties, the capacity of the obligor, and the signing, sealing, and delivering of the article by him, and its attestation by the witness with his subscription:

The counsel for the plaintiff was proceeding with a cross-examination of the witness when the counsel for the defendants inquired what facts he proposed to prove by the examination. The reply, in substance, was that he expected to prove by him and other witnesses that Judson, at the time the article was executed to him, was the attorney and professional adviser of Chaffee, and that the instrument was obtained from Chaffee by Judson by means of fraudulent representations and practices.

The defendants' counsel objected to the competency of such evidence on a trial at law, and insisted that a specialty could only be impeached for fraud by bill in equity filed against all parties having an interest in the instrument, and claiming, with allegations and appropriate prayers, to have it set aside or canceled for such cause. It was, moreover, insisted that, the defendants being purchasers of their title from Judson for a valuable consideration, their rights could not be affected if there was fraud in the transaction between Judson and Chaffee, and that the plaintiff was not a party entitled to interpose the objection made to the instrument. I do not suppose I give the exact terms in which the proposal of the plaintiff's counsel, or the objections of the defendants, were made, both being stated verbally, and no written proposition being laid by either counsel before the court; but I am persuaded the substance of the offer, and of the objections to it, is correctly stated; and, in respect to the competency of a court of law to take cognizance of the charge of fraud, there is no ground to doubt that the scope and bearing of the defendants' objection was correctly apprehended, for that was read to the court from Cowen & Hill's Notes to Phillips on Evidence (volume 3, p. 1449, note 969), and was emphatically adopted by the defendants' counsel as the position of the defense, which is "that no fraud whatever can be set up in a court of law, to affect the operation of a sealed instrument, save such as relates to the execution." It is to be observed that the proposition of the plaintiff was to discredit the paper offered in evidence, by proof that it was contaminated with fraud. He asked no judgment of the court specially against the instrument, to set it aside, annul, or cancel it; but he claimed the right to submit to the jury the question of fact, upon evidence, whether the instrument had been fraudulently procured by Judson from Chaffee.

The argument proceeded upon both sides on the assumption that this proposition, in its broadest scope, was before the court, and was not restricted by any qualification or criticism of the terms in which it was propounded. So I understood it, and consequently both parties were entitled to the judgment of the court upon it, in that sense. I endeavored to make my decision so comprehensive as to cover the whole question. And it may be further remarked that, if the decision is sound in law, neither party is to be affected for want of justice in the reasoning or aptness of the analogies employed by the court in rendering it.

The posture of the case seems to render appropriate a statement of some legal principles, which may be regarded elementary and trite.

The first is upon the effect of fraud in respect to written contracts, or grants infected with it. Does it take from them all legal vitality, or do they have operation according to their import until rescinded or abrogated by a direct judgment of nullity against them? To my understanding of the authorities upon that point, they speak with one voice, and pronounce all contracts, specialties, and transactions tainted with fraud, void in law. Fermor's Case, 3 Coke, 77; Com. Dig. "Covin," A, and B 1; 1 Burrows, 390; 4 Durn. & E. [Term R.] 63, 64; Com. Cont. 58; Chit. Cont. (Perkins' Ed.) § 587; 2 Saund. Pl. & Ev. 527; Starkie, Ev. pt. 4, p. 586. This is clearly the English rule, and the American authorities coincide with it to the largest extent. 1 Greenl. Ev. § 284; Story, Cont. §§ 495, 496; 2 Kent, Comm. (6th Ed.) 484, note. This position is not a speculative one of compilers or

elementary writers. The courts declare it emphatically in their judgments. The supreme court of the United States says, "Fraud vitiates any, even the most solemn transactions, and an asserted title to property founded on it is utterly void." "Where fraud is satisfactorily proved, it overthrows all the sanctity even of public documents, and destroys them as proof." [U. S. v. The Amistad] 15 Pet. [40 U. S.] 594. To like effect are [Gregg v. Sayre's Lessee] 8 Pet. [33 U. S.] 244; [U. S. v. Laub] 12 Pet. [37 U. S.] 1. Judge Story says the general rule is, "when a fraud is perpetrated by one of the parties to the transaction upon the other, then the transaction, be it what it may, an act in pais, a deed, an authority, a conveyance, or any other instrument, is utterly void." Bottomley v. U. S. [Case No. 1,688]. "Take the case where one party obtains a license, contract, obligation, conveyance, or other instrument, from another by fraud, imposition, or undue influence upon the latter, the transaction is constantly treated as a mere nullity between them. In contemplation of law it never had any existence." The doctrine is adopted with equal explicitness by the supreme court of this state. Kent, C. J., says, "Fraud will invalidate and annul every contract and every conveyance affected with it." 10 Johns. 463. The same principle is recognized in other cases (3 Johns. 235; 6 Johns. 111; 20 Johns. 49, 51; 1 Johns. Ch. 429), and is repeated and reaffirmed in numerous subsequent decisions (15 Johns. 147; 13 Wend. 570; 23 Wend. 268; 1 Hill, 302; Id. 311). The decisions in courts of high character in other states are of the same import. 18 Pick. 95; 22 Pick. 546, and cases cited; 8 Gill & J. 621, on appeal; 5 Gilman, 573.

The second point of familiar law is that courts of law have concurrent jurisdiction with courts of equity in questions of fraud. This doctrine is imbedded in the earliest authorities, and is acquiesced in and affirmed down to the most recent. Blackstone lays it down as an elementary principle. 3 Bl. Comm. 431. Lord Mansfield adopts it as an unquestioned rule of decision. 1 Burrows, 390. The supreme courts of the United States recognize and declare it in repeated instances. They say "it has been often ruled in that court, and is a well established principle." [Gregg v. Sayre's Lessee] 8 Pet. [33 U. S.] 252; [Lessee of Swayze v. Burke] 12 Pet. [37 U. S.] 23; [Gaines v. Chew] 2 How. [43 U. S.] 645; 18 Pick. 95. Chief Justice Kent says, "Courts of law have concurrent jurisdiction with chancery in all cases of fraud." 10 Johns. 462. Spencer, J., reiterates the doctrine (18 Johns. 404), and it is adopted and affirmed in 4 Cow. 220. Some cases suggest a qualification to the universality of this concurrent jurisdiction over fraud, in the instance of presumptive or implied frauds, because courts of law only act in the matter and relieve against frauds when established by proof, but courts of equity may infer or presume fraud in transactions without other evidence than the relation of the parties to the transaction to each other, as, for instance, in the conveyance taken by an attorney from his client. 1 Story, Eq. Jur. 310, 311; 4 Cow. 220.

Upon these two elementary dogmas of the law,—that fraud entering into a contract or transaction renders it a nullity, and that this court on a trial at law has cognizance of the question of fraud raised in the present case,—I shall endeavor to show from the English authorities, the adjudications of the supreme court of the United States, the decisions of the supreme court of the state of New York, contained in the reports of Johnson, Cowen, Wendell, and Hill, and the decisions of sister states, that the plaintiff was entitled to give oral proof to the court and jury that the article of September 5, 1850, was procured by Judson from Chaffee by means of fraudulent representations and practices. And also, if the jury believe the fact is proved, then that the instrument can have no operation or effect in this cause against the title of the plaintiff.

I do not intend to comment at large upon the cases cited by the counsel for the defendants from the decisions of the courts of this state, holding that a deed or specialty cannot be impeached at law by proof that there was fraud perpetrated in its consideration, because the offer of evidence made by the plaintiff was no way limited to fraud in the consideration of the article of September 5, 1850. It did not allude to any fraud in that particular, nor did the offer specify how the fraud was committed, or in what feature of the instrument it existed. If any description of fraud could then destroy the operation of the deed, the plaintiff, under his offer of evidence, would be entitled to prove such a fraud. But this point should not be passed by without the remark that the doctrine of the New York courts, that a deed or sealed instrument is valid at law, notwithstanding it was obtained upon a covinous and fraudulent consideration, is, by the supreme court of Massachusetts, upon a very able and learned review of the principles of the common law, denied to be in consonance with those principles (18 Pick. 107), and that the supreme court of this state has subsequently, under the sanction of an act of the legislature, with apparent alacrity, renounced the doctrine as one founded upon artificial and technical considerations, and now holds that contracts, sealed or unsealed, stand upon the same footing, and the defense of fraud applicable to one is equally applicable to the other (14 Wend. 195). The court say the notion that there is greater solemnity in the execution of an instrument with a seal attached to it seems to be repudiated. The party is no longer estopped by his seal from showing the truth; there is now no magic in a wafer. Johnson v. Miln, 14 Wend. 195.

The same principle in respect to agreements, with or without seal, is recognized in Oakley v. Boormen, 21 Wend. 591, 594, and it is admitted by the court that the contract, when attempted to be enforced, may be defeated if there were fraud, mistake, or illegality in its concoction. I regard it therefore settled upon authority that no distinction exists between sealed instruments and unsealed ones contaminated with fraud, both being alike void, and that the jurisdiction of courts of law extends equally to each; and it might seem a necessary sequent from these premises that neither of them could be set up as evidence of title, or have any operation in a court of law, any more than if forged; but I do not design to put the case upon a mere deduction of logic, and shall attempt to show that the procedures of courts of law, in the exercise of their jurisdiction in this particular, authorized and sanctioned the admission of the evidence received by the court in this instance.

In Bright v. Eynon, 1 Burrows. 390, a release or discharge of the plaintiff's demand was set up on a trial at law, and, to an offer of evidence that it was fraudulently obtained, it was objected that the relief lay in equity, if such were the fact. Lord Mansfield and the court held that fraud and covin avoid every kind of act, and may be proved on a trial at law, and thus defeat the instrument. Doe v. Martin, on ejectment: The defense was a deed executed to the defendants by an agent of the lessor under a power. It was proved on the trial that the deed was fraudulently given by the one having the power, and the court of king's bench held the deed void at law, although the principal had not concurred in the fraudulent act of his agent. 4 Durn. & E. [Term R.] 63–91. Hayne v. Maltby: Under a plea of fraud to an action of a patentee, because he was not the original discoverer of the thing patented and assigned to the defendant; the court held that the assignment was fraudulent and void. The same defense could have been made under the general issue; a plea or replication of fraud amounts to a special non est factum, and in modern practice is not used. 4 Maule & S. 338; 12 Johns. 430.

The elementary writers lay down the rule, as universal, that where fraud is the defense—to a specialty—non est factum is the proper plea, and evidence of the fraud can be given under it at trial without notice. 1 Chit. Pl. 563; Com. Dig. pl. 2 W, 18; 2 Starkie, Ev. (by Metcalf) 555; 1 Greenl. Ev. § 254; 2 Greenl. Ev. § 331; Adams, Eject. 286.

In Gregg v. Sayre's Lessee the defense on the trial was that a deed relied on by the lessor had been fraudulently obtained. The court held the evidence rightly admitted, and that it was the province of the jury to determine whether the acts done were fraudulent. 8 Pet. [33 U. S.] 244. The same

principle is declared in Lessee of Swayze v. Burke, 12 Pet. [37 U. S.] 11. In Boyce's Ex'rs v. Grundy, the party affected by a fraudulent deed permitted a recovery to be had upon it in an action at law, and then instituted his suit in equity to get rid of it. The supreme court say, "The defense of fraud against the deed was good at law, and ought to have been made there." 3 Pet. [28 U. S.] 210. In Rhoades v. Selin [Case No. 11,740], in ejectment in the United States circuit court, the defendant set up as defense against the plaintiff a conveyance of the property to him under a purchase at public sale made by order of the orphans' court. The plaintiff offered evidence, in avoidance of the deed, that a fraud was committed by the purchaser in obtaining the land. The plaintiff objected to the evidence, insisting that the allegation of fraud to defeat a deed could only be inquired into in a court of equity. Judge Washington overruled the objection, holding that the jurisdiction of a court of law in such case was as old as the common law, and admitted the evidence impeaching the deed.

It may be said of the courts of this state, in the language of Chief Justice Shaw, 18 Pick. 107, that in them it has been rather acted on as a settled rule of law, than discussed and adjudged as a controverted point in particular cases, that fraud is a good defense at law against a deed. Instances in which the doctrine has been plainly recognized and applied are frequent and pointed. Allison v. Matthieu, 3 Johns. 235, was trover for goods. Chief Justice Kent admitted on the trial evidence that the defendant had purchased or procured the goods from the plaintiff by fraudulent means. The supreme court affirmed the ruling at nisi prius, and declared "that fraud might be proved on a trial at law, and would violate and avoid the sale." This doctrine is ratified repeatedly. 15 Johns. 147; 13 Wend. 570; 1 Hill, 102; Id. 311. Jackson v. Rumsey was ejectment by a devisee to recover lands devised. Among other things the defendant offered to prove that the will had been obtained by unfair practices of the devisee. This evidence was rejected at the circuit. Judge Kent, in delivering the opinion of the court reversing that decision. and ordering a new trial, says "that questions of fraud in obtaining a will are appropriately triable at law." 3 Johns. Cas. 234. Hallenbeck v. De Witt recognizes the same principle. It was covenant on a specialty to which non est factum was pleaded. The defense on the trial was, that the instrument was contaminated with fraud, and the jury, on that evidence, found a verdict for the defendant. The court set aside the verdict because the proof was not sufficient to support the charge. No intimation was made that oral evidence was incompetent or was improperly admitted to prove the alleged fraud. 2 Johns. 404. Willson v. Fores, 6 Johns. 111, was a de-

fense of fraud in the consideration of a special contract. The plaintiff agreed to take in payment for property sold a promissory note of a third person. On a suit for the value of the property the defendant set up that special contract in bar of the action. The plaintiff offered to prove on the trial that the defendant knew at the time that the maker of the note was insolvent. The court below rejected the evidence. The supreme court, on error, reversed the judgment, and held that the evidence ought to have been received, because it went to prove fraud in the defendant in the special contract, and declared it a well-settled principle of law that "fraudulent representations will vitiate any contract." Jackson v. Burgott, 10 Johns. 457, was ejectment. The parties claimed title under the same grantor. The defendant held under a deed regularly executed and recorded, and having priority of registry. The plaintiff denied the validity of the prior registry, because it had been fraudulently obtained. The court adjudged the first registered conveyance fraudulent and void, and gave judgment for the plaintiff, because of the fraud. Jackson v. Ferguson, 12 Johns. 469: This was ejectment by a party holding a sheriff's deed given on a sale of the lands upon execution against Morrison. Morrison acquired them from Frear. After his conveyance to Morrison, Frear had deeded them to Ferguson, the defendant. On the trial the defendant proved that the conveyance to Morrison was fraudulently obtained, and the court gave judgment for the defendant, on the ground that Morrison's title was fraudulent and void. Jackson v. Crafts, 18 Johns. 110, was ejectment, by a purchaser, under foreclosure of a mortgage at law. One ground of defense at the trial was evidence that the sale and conveyance had been fraudulently made. The verdict was for the plaintiff, but the court set it aside; and one point upon which the decision was placed was that the proceeding of the mortgage sale was unfair and fraudulent, and to sanction such proceeding would be subversive of justice. So in Jackson v. Sternberg, 20 Johns. 49–51, it is treated as established law that fraud practiced in obtaining a deed vitiates and renders the conveyance void, and that the fraud may be proved by parol on trial of an ejectment for the recovery of the lands conveyed. Sandford v. Handy, 23 Wend. 260, was covenant on a sealed instrument, and, on non est factum pleaded, the defendant offered at the trial parol evidence to prove that the deed had been procured by the plaintiff's agent by means of fraudulent representations. The judge excluded the evidence at nisi prius. Judge Nelson, in delivering the opinion of the supreme court, held that in law fraudulent representations of an agent were of the same effect as if made by the principal, and that it was competent for the defendant to prove the fraud by parol evidence on a trial at law. The verdict was set aside and a new trial ordered.

In my judgment, all the cases cited from the New York courts in the note to Phillips, as before referred to, and relied upon by the defendants, as excluding the proof offered in this case, concur in the principle above laid down, that every written conveyance or agreement mixed with fraud, whether in the contracting part or the execution, and whether it be offered to support an action or a defense, may be impeached and defeated for that cause on a trial at law; and I confidently invoke those cases as affording strong and direct support to the decision made on this trial. I am persuaded it will be found that Vrooman v. Phelps, 2 Johns. 177; Dorlan v. Sammis, Id. 179, note; Van Valkenburgh v. Rouk, 12 Johns. 337; Dorr v. Munsell, 13 Johns. 430; Parker v. Parmele, 20 Johns. 134; Franchot v. Leach, 5 Cow. 506; Champion v. White, Id. 509; 9 Cow. 307; Belden v. Davies, 2 Hall, 433; 3 Sandf. 1,—the cases so relied upon, either in direct terms or by indubitable implication, admit the general doctrine that fraud vitiates and destroys any written instrument, and may be proved on a trial at law, with only the exception that the rule did not at the time those decisions were made apply to fraud in the consideration of specialties; and with the qualification that fraud, to render a specialty void, must be some fraud in the execution of the deed. It is to be borne in mind that it matters not to the plaintiff whether the fraud necessary to prevent the operation of the instrument in question must consist in one relating to the consideration, or the terms or stipulations of the deed, or be mixed with its execution in the ordinary acceptation of that term, because the offer of evidence on his part covered any and every description of fraud which could, in contemplation of law, work the defeat of the instrument. It seems plain, however, that the counsel for the defendants understood a fraud relating to the execution of this instrument to be something connected with the act of signing, sealing, or delivering it, for his proof of its execution was limited to those particulars, and his effort was understood to be directed to restraining the cross-examination of the subscribing witness to them solely. In ruling that the evidence need not be so restricted, the court adopted and had reference to that as the legal and appropriate signification of the expression, and held that fraud or covin practiced in obtaining the stipulations, agreements, or grants in the deed would destroy it, and that the evidence of fraud need not be confined to acts relating to the execution of the instruments.

In my judgment, the cases already cited demonstrate that a cheat or fraud practiced by Judson upon Chaffee, in procuring the agreements or grants in the article in question, or by fraudulently misrepresenting their import and effect, rendered it void just

as effectually as would the adding a seal to it by Judson after it was delivered to him, and without the knowledge of Chaffee, or obtaining his signature to a paper fraudulently substituted in place of the one he intended to sign. , With the greatest respect for the courts of this state, I cannot but think they have used the term "execution" in an unusual sense, in comprehending within it any acts other than the formalities necessary to constitute a specialty, and particularly in applying it—as most of the cases cited by the counsel for the defendants manifestly do—to every other vital constituent of a deed, except its consideration; for no one of them intimates that a deed can be sustained when contaminated by fraud in any particular other than its consideration. In Jackson v. Burgott, 10 Johns. 457; Jackson v. Crafts, 18 Johns. 110; Jackson v. Miln, 14 Wend. 195; Sanford v. Handy, 23 Wend. 260; [Boyce's Ex'rs v. Grundy] 3 Pet. [28 U. S.] 210; [Gregg v. Sayre's Lessee] 8 Pet. [33 U. S.] 244; [U. S. v. Laub] 12 Pet. [37 U. S.] 1; Rhoades v. Selin [Case No. 11,740]; 4 Durn. & E. [Term R.] 67,—the deeds were all duly and properly executed; yet they were all defeated by proof on trial of fraudulent representations or practices employed in relation to the stipulations or granting parts. The rule laid down by me is also clearly authorized and sanctioned by decisions in the highest courts of other states. The court of appeals in Maryland decided, on full consideration, that a specialty might be defeated by proof on trial in a court of law, where it was offered in evidence that it had been fraudulently obtained. Pocock v. Hendricks, 8 Gill & J. 421. The supreme court of Illinois, in a case carefully examined, held that, upon principles of the common law, a patent for lands granted by the United States could be defeated by proof that it had been procured by fraudulent representations. The patent was offered in evidence in ejectment, in support of title to the lands, and parol evidence of the fraud was admitted at the trial to defeat it. Rogers v. Brent, 6 Gilman, 573. So, in New Jersey, the supreme court, in error, decided that parol evidence of false and fraudulent representations used in obtaining a specialty could be given under the general issue on the trial of the cause, and would be sufficient to defeat the action. Armstrong v. Hall, Coxe. [1 N. J. Law] 178. The same principle is reasserted in that court in Curtis v. Hall, 1 South. [4 N. J. Law] 148, 361. The decisions in Massachusetts are direct, full, and explicit in support of the same doctrine. Hazard v. Irwin, 18 Pick. 95, 104, 107; Holbrooke v. Burt, 22 Pick. 546, and cases cited in those decisions. The same principle is recognized in 4 Metc. [Mass.] 513; 11 Metc. [Mass.] 330.

The argument of the defendants' counsel, that resort must be had to equity to impeach a specialty for fraud, was based upon the decision of the court of errors in James v. McKernon. 6 Johns. 543, and he contended that the court in that judgment fixed the rule to be that a deed can only be avoided for fraud by means of a bill filed for that purpose, and with allegations and prayer appropriate to that end. I do not purpose to enter at large into the discussion of what is necessary to be done, in equity, when a party seeks to resist the operation of a specialty because of fraud. This is an action at law, and directions to govern proceedings in equity have no authority here, unless dictated by a court assuming to regulate the procedure of all other tribunals, and having authority so to do. But, to my judgment, the decision in James v. McKernon has no such bearing as is claimed for it in the argument. It purports to settle no other point than that a court of chancery, upon a bill filed for discovery and account only, and in defense to which action the defendant by answer sets up a sealed agreement, cannot decree a rescission of that agreement because vitiated with fraud; nor can the court on such state of the pleadings take proof of fraud to that end, it being a cardinal principle of equity practice that the proofs and decree must be in consonance with the allegations of the bill. The chancellor in the court below admitted evidence that fraud had been practiced in procuring the agreement, and decreed that it be set aside, and the court of errors on appeal reversed that decree. The chancery practice may have imposed upon the plaintiff the necessity of replying to the answer so interposed, and excluded him from the privilege of impeaching the deed without framing an issue of fraud in avoidance of the bar made to the suit by the answer. But the case no way determines—if the defendant had only denied he had effects of the plaintiff in his hands, or that the plaintiff was entitled to an account from him, and had given the deed in evidence at the hearing to prove his release or discharge from the demand—that the plaintiff might not then have defeated the release or discharge by proving it fraudulent. If the case imports any doctrine of that character, then I apprehend the principle is overturned, or at least neutralized, by a later decision of the same court. Ferris v. Crawford, 2 Denio, 595, 604. In this case the court unanimously held that a release under seal might be impeached, and its operation be defeated in chancery, for fraud, without any bill filed charging the fraud, or praying to abrogate it or set it aside. But if the system of chancery pleading did exact a special replication to the answer in the case of James v. McKernon, or that new allegations should be introduced into the bill, so that a direct issue be formed upon the charge of fraud made against the agreement, that practice is not exacted at law, and to a plea in the present case of the article of September 5, 1850, as a link in the

defendant's title, the plaintiff would not have been bound to reply that the article was obtained by fraud, for if so pleaded, the proper conclusion to the plea would be, "Et sic non est factum," and whatever may be evidence under special plea of non est factum is so under the general issue. Thompson v. Rock, 4 Maule & S. 338. The same doctrine is embraced in Van Valkenburgh v. Rouk, 12 Johns. 338; 1 Chit. Pl. 479.

It was urged most strenuously for the defendants that the plaintiff must resort to a court of equity to impeach the instrument, because that court alone possessed the right to set it aside or adjudge it void, and because there only could Judson, and others having interests connected with the instrument, come in as parties, and prevent their rights being compromitted by a decision against its validity. It might, perhaps, be a sufficient answer to these objections to say the plaintiff, in seeking redress, is not bound to look to or shelter interests of parties adversary to his own; and that, if others have equities under the instrument which can be upheld in chancery, this suit at law, the finding of the jury upon the question of fraud, or the rejection of the instrument as evidence upon such finding, in no way bars or impedes the prosecution by them in equity of their rights in that respect, nor does it impose any disadvantage upon Judson or such other parties which they would not encounter in equity. The evidence in that court to establish fraud need be no other or higher than in this. Oral evidence is adequate to impeach or abrogate a specialty in equity; and Judson, with all others setting up interests in connection with the instrument, and in hostility to those of the plaintiff, might be concluded by a single hearing in that court, because the result might be the rescission and canceling of the instrument, while its impeachment on one trial at law does not prevent them coming in to support it on every subsequent trial in which its validity may be called in question. The proceedings in equity, however, need not demand any action of the court upon the instrument itself, and in such case, if interposed by the defendants as evidence of their right or title, it, in my judgment, would stand upon the same footing there as on a trial before a jury, and its impeachment would be in the same manner and to the same extent in either court. The instrument would, after such impeachment in a particular case, be in as full force everywhere else as it ever was. 2 Denio, 604. In this point of view a court of law acts upon the instrument and gives relief against it, upon the same evidence and to the same extent as a court of equity, for in both the fact that it is contaminated with fraud "overthrows and destroys it as proof." [U. S. v. The Amistad] 15 Pet. [40 U. S.] 594. And the court does no more than refuse to give effect to it for that cause. 2 Denio, 604. Chancellor Kent says the rules of evidence, particularly in respect to fraud, are

the same in courts of law and equity. Stevens v. Cooper, 1 Johns. Ch. 429. So are the elementary authorities. Spence, Eq. Jur. 555; 1 Story, Eq. Jur. § 160; 3 Bl. Comm. 436. The supreme court of this state also declares the same doctrine, with the distinction that at law the fraud must be proved, while a court of equity may infer it from the nature of the transaction and the situation of the parties. Jackson v. King, 4 Cow. 220. That a conveyance or agreement is obtained by an attorney from his client is a prominent instance in which courts of equity will imply and presume without proof that the transaction is fraudulent. 1 Story, Eq. Jur. §§ 310–313. In Lowe v. Blake, the court of chancery of South Carolina admitted parol evidence to impeach a release under seal for fraud when offered in evidence to set aside an attachment for debt, without requiring the plaintiff to proceed against it by bill, or take any issue upon the point of fraud by pleading, and the decision was affirmed by the court of appeals. 3 Desaus. Eq. 269. The court of errors in this state also decided unanimously that a release under seal might be impeached for fraud by parol evidence by a party opposing a motion founded upon it, and without sending it to law, or taking any affirmative proceedings in chancery to vacate or rescind it. Ferris v. Crawford, 2 Denio, 595. Bronson, C. J., in assigning the reason of the court, says: "The chancellor was not asked to set the release aside, nor has it been set aside by the chancellor. It is in as full force now as it ever was. The chancellor has only refused to give effect to the release, and it would be strange, indeed, ir any court could not do that when an instrument obtained by wicked means for wicked ends is brought forward as a ground for either making or opposing a motion" (Id. 604); and adds, "Whether the vice chancellor held there was no fraud, or that he ought not to inquire into it, he was equally in error" (Id. 605).

These authorities, in my judgment, sufficiently indicate that in a proceeding in equity or law, when an instrument in writing is interposed by either party, affecting a question on trial, and the party against whom it is produced does not ask to set it aside, nor seek to annul or vacate it, but only to impeach it as evidence because tainted with fraud, and thus to prevent its operating in the particular cause, he can do so by evidence on the trial without any form of pleading or any suit demanding specifically the abrogation of the instrument. This is palpably a sufficient and reasonable remedy. The plaintiff is not called upon to protect the interests of other and unknown parties under or against the instrument, nor, at his own expense, have it annulled or abated as a public nuisance. He is only concerned to prevent its exercising an influence injurious to him personally. All his concern with it is satisfied if it be shown not to be a credible witness

against him. Why, with more propriety can he be compelled to institute a suit in chancery against all the world who may chance to set up interests in connection with such instrument, in order to vacate or cancel it, than he would be to have a false witness indicted and convicted of perjury, to prevent his testifying in a particular case? It answers all the ends of the party to impeach the credit of the witness, and after that, as the court of errors say in regard to a specialty impeached for fraud, he would stand as to others just as good a witness as he was before. In this manner the relief against a fraudulent instrument set up on trial would be to the same extent and obtained in the same manner in a court of law and court of equity, and that is all I deem necessary to say now in vindication of the position taken on the trial of this cause, and of the remarks made in deciding the point of evidence. But, whether the illustration so used by the court was founded upon sound principles or not, it no way affects the rights of the plaintiff. He did not maintain an identity in the functions of the two courts. He claimed no decision on that proposition. All the necessity of his case demanded was that the court should admit the evidence to the jury, and that he might by their verdict defeat the operation of the instrument, if proved to be a fraudulent one; and it was indifferent to the result of this litigation whether his relief would thereby be to the same or a different extent from what the proof might have secured him, if the controversy had been in equity.

The defendants took a further exception to the evidence offered at trial, that the plaintiff, being an assignee, was not a competent party to set up the fraud imputed to the instrument, and that the defendants, not being connected with the transaction between Chaffee and Judson, but purchasers subsequently, and for a valuable consideration, cannot be prejudiced if the deed was mixed with fraud. As a general proposition, an assignee, in being chargeable with the liability of his assignor, takes also all his legal and equitable rights and privileges, and can avail himself of the same means to sustain his title, and repel any attack upon it, as the law allows the assignor to employ. So, also, as a general rule, an assignee or purchaser comes only into the place and title of his vendor, and the title he holds may be impeached in his hands the same as when it remained with his assignor. If he claims an exemption from that rule, because he is a purchaser without notice of the fraud, and for a valuable consideration, or the plaintiff claims he is chargeable because he purchased with notice, that particular, with whichever party the affirmative evidence may lie, rests upon a fact which must be proved to and found by the jury. The province of the court is not to exonerate an assignee from the effects of the fraud, nor charge him with it as matter of

law, but only to instruct the jury what particulars they must inquire into and determine as a foundation for the judgment of the court. In this instance it is enough to say that no evidence was before the court, other than the license or assignment to the defendants, that they were bona fide purchasers, and that the question was not submitted to the decision of the court, whether in law a recital of purchase and consideration paid conferred on the defendants the privilege of purchasers without notice, until the contrary was proved; nor did the defendant demand the judgment of the court whether there was any testimony in the cause which the plaintiff was entitled to submit to the jury as evidence of notice to the defendants of the fraud alleged; nor, when all the evidence was in, did the defendants then raise the question whether at law it was sufficient to authorize the jury to find the defendants were connected with the transaction between Judson and Chaffee, or had notice of the manner in which the deed was procured.

I think, upon the whole case, that there is prima facie ample authority in support of the decision at nisi prius that the plaintiff might impeach the instrument of Sept. 5, 1850, and prevent its operation in the case against him, by proving it had been procured by Judson from Chaffee by fraudulent representations or practices.

[NOTE. For other cases involving this patent, see note to Day v. Union India-Rubber Co., Case No. 3,691.]